Jerry E. PRITCHETT and Patricia D. Pritchett, et al., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.

Nos. 86–7261 to 86–7263, 86–7265 and 86–7268.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1987.

Decided Sept. 11, 1987.

Bruce I. Hochman and Martin N. Gelfand, Beverly Hills, Cal., and Marc Marmaro, Los Angeles, Cal. for petitioners-appellants.

Roger M. Olsen and Michael L. Paup, Washington, D.C., for respondent-appellee.

Before KENNEDY, SKOPIL and KOZINSKI, Circuit Judges.

SKOPIL, Circuit Judge:

We must decide in this case whether taxpayers, limited partners in five similar partnerships engaged in oil and gas drilling operations, were "at risk" pursuant to 26 U.S.C. § 465 on certain recourse notes and thus entitled to deduct distributive shares of non-cash partnership losses. The Tax Court in a reviewed, split decision held that each taxpayer was at risk only to the extent of actual cash contribution. *Pritchett v. Commissioner*, 85 T.C. 580 (1985). We reject the Tax Court's rationale in holding that taxpayers were not at risk on the recourse debt. We remand to allow the Tax Court to consider the Commissioner's alternative theory that taxpayers were not at risk because the creditor had an impermissible role in the activity at issue. *See* 26 U.S.C. § 465(b)(3).

## FACTS AND PROCEEDINGS BELOW

Taxpayers are each members in similar limited partnerships formed to conduct oil and gas operations. All five partnerships entered into agreements with Fairfield Drilling Corporation ("Fairfield") whereby Fairfield agreed to drill, develop, and exploit any productive wells. Fairfield provided all necessary equipment and exper-

tise. Pursuant to a "turnkey" agreement, each partnership paid cash and executed a recourse note to Fairfield. Each note was non-interest-bearing and matured in fifteen years. Each was secured by virtually all of the maker-partnership's assets. The principal for each note was to be paid from net income available to each partnership if the drilling operations proved successful. Only the general partners were personally liable under the notes. Nevertheless, each partnership agreement provided that if the notes were not paid off at maturity, the limited partners would be personally obligated to make additional capital contributions to cover the deficiency when called upon to do so by the general partners.

Each partnership elected to use accrual accounting and to deduct intangible drilling costs as an expense. The partnership agreements provided that all losses were to be allocated among limited partners in proportion to their respective capital contributions. Because there was no income in the tax year in question, each limited partner deducted from taxable income a distributive share of partnership loss. The Commissioner disallowed that portion of the deduction based on the note.

The Tax Court affirmed by a 9–7 vote the Commissioner's action. The majority held that under the partnership agreements the limited partners had no personal liability on the notes for the tax year in question and therefore they were at risk under section 465 only for the actual cash contribution made to the partnerships. *Pritchett*, 85 T.C. at 590. Any potential liability was "merely a contingency" since in the first year of the partnership it was not known whether income would be sufficient to pay off the note or even whether the general partners would in fact exercise their discretion to make a cash call on an unpaid balance fifteen years later. *Id.* at 588.

Seven judges dissented in three separate opinions. One judge reasoned that for federal tax purposes, "both general and limited partners are personally liable for a pro rata portion of the partnership's recourse obligation to Fairfield." *Id.* at 594 (Whitaker, J., dissenting). Another found noth-

ing in the agreements to indicate the general partners had unilateral discretion to waive the cash call. *Id.* at 599 (Cohen, J., dissenting). A majority of the dissenting judges apparently believed, however, that the Commissioner's actions might be affirmed on the alternative ground that section 465(b)(3)(A) provides that amounts borrowed are not at risk if the money is borrowed from someone with an interest in the activity at issue. *E.g., id.* at 593 (Whitaker, J., dissenting) ("majority may have inadvertently reached the right result, although for the wrong reasons"). The majority notes this alternative ground but expressly does not adopt it. *Id.* at 590.

These timely appeals followed.

## DISCUSSION

In 1976 Congress added section 465 to the Internal Revenue Code to combat abuse of tax shelters caused by nonrecourse financing. *See Commissioner v. Tufts,* 461 U.S. 300, 309 n. 7, 103 S.Ct. 1826, 1832 n. 7, 75 L.Ed.2d 863 (1983). Section 465 forbids a taxpayer from taking a loss in excess of amounts at risk in the investment. The statute provides in relevant part that:

(1) ... a taxpayer shall be considered at risk for ...

(A) the amount of money ... contributed by the taxpayer to the activity, and

(B) amounts borrowed with respect to such activity....

(2) ... a taxpayer shall be considered at risk with respect to amounts borrowed ... to the extent that he—

(A) is personally liable for the repayment of such amounts....

26 U.S.C. § 465(b).

■ The limited partners argue that the notes create at risk debt because each limited partner is personally liable. The contract provisions provide that if the notes are not paid off by the successful drilling operations, "the General Partners *will* by written notice call for additional capital contributions in an amount sufficient to pay the outstanding balance" and that "[e]ach Limited Partner *shall* be obligated

to pay in cash to the Partnership" the amount called. (Emphasis added). It is clear, however, as the majority opinion notes, that the limited partners are not directly and personally liable to Fairfield. *Pritchett,* 85 T.C. at 587–88. Even assuming a third party beneficiary right, Fairfield had no recourse against the limited partners until the end of the note's fifteen year term.

Whether the Tax Court's decision is correct hinges on its characterization of taxpayers' obligation as indirect and secondary. In a decision rendered shortly after *Pritchett,* the Tax Court sought to distinguish between direct and indirect liability. *Abramson v. Commissioner,* 86 T.C. 360, 375–76 (1986). In that reviewed decision, the Tax Court, by a 15–1 vote, held that limited partners' pro rata shares of partnership debt that was to be repaid in whole or in part out of partnership revenues was at risk. *Id.* The limited partners had a direct contractual liability to a third party seller of goods. *Abramson* distinguished *Pritchett* by noting:

In *Pritchett* the limited partners were not directly liable to the lender on the partnership obligation. Rather, the general partner was personally liable to the lender on the recourse obligation, and the limited partners were, if anything, potential indemnitors of the general partner. The limited partners were not obligated on any debt for purposes of section 456 until the general partner called for contributions to the partnership. Consequently, in *Pritchett,* the limited partners had not borrowed any amount within the meaning of section 465(b)(2). In this case, to the contrary, each partner is personally and directly liable for a pro rata part of the amount owed to the seller.... Because each partner's liability for the partnership debt (in the words of the statute, for the "amounts borrowed") ran directly to the seller and each partner's liability was personal, each partner is at risk for his proportionate share of amount owed to the seller.

*Id.* at 376.

We agree that Congress intended to condition section 465's exclusion of deductions

in part on whether the liability for borrowing is primary or secondary. The statute expressly requires that the taxpayer be "personally liable for the repayment." 26 U.S.C. § 465(b)(2)(A). In debate on the Deficit Reduction Act of 1984, a House Report explained that section 465 limits an at-risk loss to, *inter alia,* "amounts borrowed for use in the activity with respect to which the taxpayer has *personal* liability." H.R.Rep. No. 98–432, Part II, 98th Cong., 2d Sess. 1506, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1146 (emphasis added). If the limited partnership agreements here create only contingent liability, we will affirm the Tax Court's decision to disallow taxpayers' deductions.

We conclude, however, that the liability of the limited partners was unavoidable and hence not contingent. In *Melvin v. Commissioner,* 88 T.C. 63 (1987), the Tax Court appeared to answer the question posed here by concluding that

> the fact that the partnership or other partners remain in the "chain of liability" should not detract from the at-risk amount of the parties who do have the ultimate liability. The critical inquiry should be who is the obligor of last resort, and in determining who has the ultimate economic responsibility for the loan, the substance of the transaction controls.

*Melvin,* 88 T.C. at 75 (citing *United States v. Raphan,* 759 F.2d 879, 885 (Fed.Cir. 1985)). Applying that standard we have no reservation in concluding that taxpayers, by virtue of their contractual obligations, have ultimate responsibility for the debt. *See Bennion v. Commissioner,* 88 T.C. 684, 695 (1987) (applying the *Melvin* standard to taxpayer's "Guarantee Agreement" to determine that taxpayer was ultimately liable on a debt obligation even though the obligation flowed through others). Furthermore, we are not dissuaded by the Tax Court's reasoning that the debt is contingent because the general partners may elect to not make the cash calls. The contracts made the call mandatory and "economic reality" dictates that the partners would do so. *See Durkin v. Commission-*

*er,* 87 T.C. 1329, 1379 (1986) (concluding that economic reality assured that promissory notes of limited partners to the partnership would be enforced).

The Tax Court also reasoned that the debt was contingent since it was not known in the tax year in question whether sufficient partnership revenues would satisfy the notes prior to or on maturity. We find the Tax Court's reasoning on this point faulty. If the notes required balloon payments upon maturity, the limited partners' obligation to contribute additional funds would be "certain." The acceleration of payments should not be a factor in the taxation analysis. In *Abramson,* like this case, early payment was tied to the success of the operation. No mention was made in *Abramson* that the debt was contingent. Furthermore, the fact that the obligation may not become due for several years in the future is of no significance to the allocation of a pro rata share of the taxpayers' debt in the tax year in question. *See Taube v. Commissioner,* 88 T.C. 464, 487 (1987) (debt due years in future is nevertheless genuine indebtedness fully includable in basis); *Melvin,* 88 T.C. at 73 ("debt obligations of a partnership that are payable in later years generally are to be included in the at-risk amounts").

■ The Commissioner argued below and on appeal that taxpayers' deductions are alternatively barred by section 465(b)(3). That subsection provides that "amounts borrowed shall not be considered to be at risk with respect to an activity if such amounts are borrowed from any person who ... has an interest (other than an interest as a creditor) in such activity." 26 U.S.C. § 465(B)(3)(A). The legislative history suggests that "*any type of financial interest* in the activity (other than as a creditor) would constitute a prohibited 'other interest' under section 465." *Bennion,* 88 T.C. at 696 (citing to Staff of Joint Committee on Taxation, General Explanation of Tax Reform Act of 1976 at 39, 1976–3 C.B. (Vol. 2) 51) (emphasis in original). Furthermore, proposed Treasury regulations provide that a lender will be deemed to have a prohibited interest if it

has either a capital interest or an interest in the net profits of the activity. *See id.* (citing Sec. 1.465–8(b), Proposed Income Tax Regs., 44 Fed. Reg. 32239 (June 5, 1979)).

The agreements here provided that Fairfield would receive twenty percent of the gross sales of oil and gas, payable if the partnerships achieved certain profit levels. Judge Simpson concluded that these arrangements gave Fairfield a "substantial interest" in the partnership. *Pritchett,* 85 T.C. at 592 (Simpson, J., concurring). Judge Cohen stated that she shared Judge Simpson's impression that Fairfield appears to be a person having an interest in the activity, but that "[t]his should be explored further by the finder of facts." *Id.* at 599 (Cohen, J., dissenting). We agree with Judge Cohen's suggestion that this possibility should be explored further. Although we may affirm a correct decision on any basis supported by the record, remand is appropriate when a lower court's "application of an incorrect legal standard leaves ... an inadequate factual record on which to affirm." *United States v. Washington,* 641 F.2d 1368, 1371 (9th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982).

Finally, the Commissioner argues that even if the debts are at risk and thus deductible, the amounts should nevertheless be limited to the present value of the notes. Section 465(b)(4) provides that "a taxpayer shall not be considered at risk with respect to amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, *or other similar arrangements.* 26 U.S.C. § 465(b)(4) (emphasis added). The Commissioner argues that interest-free notes should be regarded as a "similar arrangement."

Our review of the record indicates that this issue was not raised below. "As a general rule, we will not consider an issue raised for the first time on appeal." *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985). Although there are exceptions to the rule, the better practice is to remand to allow the Tax Court to address such an issue first. *See id.* (trial tactics

and legal arguments may have been different if the Commissioner had argued the issue below). Accordingly, we also remand this issue for the Tax Court's consideration.

REVERSED and REMANDED.