JERRY E. PRITCHETT AND PATRICIA D. PRITCHETT, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Pritchett v. Comm'r
Docket Nos. 14586-81; 18127-81; 18128-81; 18477-81; 27413-82.
United States Tax Court
T.C. Memo 1989-21; 1989 Tax Ct. Memo LEXIS 28; 56 T.C.M. (CCH) 1070; T.C.M. (RIA) 89021; January 11, 1989; As amended January 12, 1989; As amended January 18, 1989 *28 Bruce I. Hochman, Martin N. Gelfand and Michael Constas, for the petitioners. Karl D. Zufelt and Steven M. Roth, for the respondent. JACOBS
*29 MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: This case is before the Court on remand from the Court of Appeals for the Ninth Circuit following appeal by petitioners from our opinion reported at 85 T.C. 580 (1985). Pritchett v. Commissioner,827 F.2d 644 (1987). In our original opinion we concluded that petitioners were not at risk within the meaning of section 465[2] with respect to certain partnership recourse notes because at the time the notes were executed, it was uncertain whether petitioners *30 would be called upon to contribute towards payment by the partnership of these notes. The Ninth Circuit disagreed with this conclusion but remanded the case for us to consider respondent's alternative theory that petitioners were not at risk because the holder of the recourse notes had a prohibited interest under section 465(b)(3)(A). The issues we must decide are (1) whether, under section 465(b)(3)(A), Fairfield Drilling Corporation had an interest other than an interest as a creditor in the activities involved; and if not, (2) whether the at risk amounts attributable to the recourse notes should be limited to the present value of such notes. Our original findings of fact, which we incorporate herein, shall be summarized to facilitate the understanding and resolution of the issues before us. FINDINGS OF FACT Petitioners are limited partners in one of five similar limited partnerships (cumulatively referred to as the partnerships). The promoters and general partners of each partnership were Albert Prager and Michael Traiger. Each partnership *31 was formed to conduct oil and gas drilling operations. One of the partnerships (T & P, Ltd.) was organized under California law in December 1976; the other four were organized under Nevada law in December 1977. [3]
All five partnerships engaged in drilling operations through a series of essentially identical transactions with Fairfield Drilling Corporation (Fairfield), a wholly owned subsidiary of Petroleum Development Corporation (PDC), a publicly held corporation. On December 29, 1977, Fairfield assigned to the partnerships (December 29, 1976, in the case of T & P, Ltd.) rights to certain oil and gas leases which it held. In exchange therefor, the partnerships agreed to pay Fairfield a royalty equal to 20 percent of the gross sales proceeds of the oil and gas extracted from the leased land, except that the royalty did not commence until the assignee-partnership received a specified amount of net profits. Concurrent with the assignment of the oil and gas leases, Fairfield and each partnership *32 executed a turnkey drilling agreement, a completion and operating agreement, and an equipment lease agreement. As a result of these agreements, Fairfield agreed to drill and develop the leased oil and gas properties of the partnerships and to provide all necessary equipment to commercially exploit all productive wells. The completion and operating agreement between T & P, Ltd. and Fairfield contained an additional provision not found in the other completion and operating agreements. Paragraph 3(d) of such agreement provided that Fairfield was entitled to receive 10 percent of the net proceeds derived from any well or leasehold for which Fairfield furnished equipment under the equipment lease agreement. Pursuant to the respective turnkey drilling agreements, each partnership paid cash and executed a recourse note to Fairfield in 1977 (1976 with respect to T & P). Each note was non-interest-bearing, had a maturity of 15 years and was secured by virtually all of the maker-partnership's assets. The principal for each note was payable from the net cash available to the partnership as a result of its drilling operations. Only the general partners were personally liable under the *33 note; however, each limited partnership agreement (as well as the certificate of limited partnership) provided that in the event the note was not paid in full at maturity, the limited partners of the maker-partnership would be personally obligated, once called upon by the general partners, to make future additional capital contributions to the maker-partnership sufficient to cover the deficiency. OPINION A taxpayer is considered at risk for an activity with respect to the amount of money and the adjusted basis of other property contributed by the taxpayer to the activity. Section 465(b)(1). [4] A taxpayer's at risk amount also includes, with limitations, amounts borrowed with respect to the activity. Section 465(b)(2). One such limitation is found in section 465(b)(3)(A). *34 Under section 465(b)(3)(A), amounts borrowed for use in an activity are not considered at risk if they are borrowed from any person who has an interest in the activity, other than an interest as a creditor. The exclusionary rule in section 465(b)(3)(A) applies even if the taxpayer-borrower is personally liable for the amounts borrowed. Respondent argues that Fairfield has an interest other than as a creditor in the activities of the various partnerships. Petitioners, citing Jackson v. Commissioner,86 T.C. 492 (1986), on appeal (10th Cir., Feb. 3, 1987), argue that the prohibited interest under section 465(b)(3)(A) must be either a capital interest or a net profits interest and that under the operative documents Fairfield possessed neither a capital interest nor a net profits interest. The language "interest (other than an interest as a creditor)" is not defined in section 465 or the committee reports accompanying the Tax Reform Act of 1976 which enacted section 465. Pub.L. 94-455, 90 Stat. 1520, 1531. However, the General Explanation of the Tax Reform Act of 1976 *35 stated that such language included any person who stands to receive financial gain from the activity. [5] Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 39, 1976-3 C.B. (Vol. 2) 51. In 1979, the Treasury issued proposed regulations which provided that a lender will be deemed to have the prohibited interest only if it has either a capital interest or a net profits interest. Sec. 1.465-8(b)(1), Proposed Income Tax Regs., 44 Fed. Reg. 32239 (June 5, 1979). To date, these proposed regulations have not been finalized. Further, we have utilized these two tests as a guideline in determining whether any of the creditors in a transaction have the prohibited interest solely to the aforementioned capital interest and net profits interest tests. Levy v. Commissioner,91 T.C. 838, *36 (1988); Larsen v. Commissioner,89 T.C. 1229 (1987); Bennion v. Commissioner,88 T.C. 684 (1987); Waddell v. Commissioner,86 T.C. 848 (1986), affd. 841 F.2d 264 (9th Cir. 1988); Jackson v. Commissioner,86 T.C. at 529. It is against this backdrop that we must decide whether Fairfield has an interest other than as a creditor. In this case, the recourse notes were payable to Fairfield from net cash available for distribution. Under the assignment agreements, Fairfield was to receive a royalty interest equal to 20 percent of gross sales of oil and gas, commencing when the partnerships attained a specified level of net profits. The concepts of gross sales and net cash differ from the concept of net profits. Fairfield has neither a capital interest nor a net profits interest (and thus it does not have an interest other than an interest as a creditor) in any of the partnerships other than T & P, Ltd. Therefore, those petitioners who are partners in partnerships other than T & P, Ltd. are at risk for the recourse notes executed by such partnerships. However, as to T & P, Ltd., Fairfield has an *37 interest in the partnership's net profits and thus has an interest other than as a creditor. Paragraph 3(d) of the Fairfield-T & P Ltd. completion and operating agreement grants Fairfield the right to "receive 10% of the net proceeds derived from any well or leasehold . . ." Fairfield's net profits interest under paragraph 3(d) constitutes an interest other than an interest as a creditor. Accordingly, petitioners Buchbinder (partners in T & P, Ltd.) are at risk only for their actual cash contributions made as of the close of 1976. Petitioners Buchbinder argue that paragraph 3(d) was inadvertently included in the completion and operating agreement and did not reflect their true intentions. Such argument is unpersuasive in light of the fact that T & P, Ltd.'s offering material referred to such net profits interest, as well as the fact that Fairfield actually received 10 percent of T & P's net profits during 1976 and 1977. In 1978, the parties, in an attempt to retroactively change paragraph 3(d) of the Fairfield - T & P, Ltd. completion and operation agreement, reduced the principal balance of T & P, Ltd's. recourse note payable to Fairfield by the amounts distributed to Fairfield *38 pursuant to paragraph 3(d). However, there was no written agreement amending such completion and operating agreement. In our opinion, the action taken in 1978 was a belated and ineffectual attempt to rectify adverse tax consequences caused by the net profits language contained in the completion and operating agreement. [6]
Having concluded that petitioners, with the exception of petitioners Buchbinder, are at risk with respect to the recourse notes executed by the partnerships, we next must determine whether the at risk amounts attributable to the recourse notes should be limited to the present value of such notes. In Follender v. Commissioner,89 T.C. 943 (1987), we addressed this issue and found that *39 present value computations for purposes of determining amounts at risk under section 465 were not warranted by the statute. Therefore, petitioners' amount at risk includes the full amount of the recourse notes without reduction for present value computations. To reflect the foregoing, Decision will be entered for the respondent in docket No. 27413-82.
Decisions will be entered for petitioners in docket Nos. 14586-81, 18127-81, 18128-81 and 18477-81.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Donald R. Clifford and Joyce K. Clifford, docket No. 18127-81; Alex Indich and Mira Indich, docket No. 18128-81; Arthur Knox, docket No. 18477-81; and Richard J. Buchbinder and Voren L. Buchbinder, docket No. 27413-82.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the tax years in issue.↩
3. Respondent determined deficiencies for petitioners' taxable year ending December 31, 1977 (December 31, 1976 in the case of petitioners Buchbinder who invested in T & P, Ltd.).↩
4. Section 465(b) provides, in relevant part, as follows: (b) AMOUNTS CONSIDERED AT RISK. -- (1) IN GENERAL. -- For purposes of this section, a taxpayer shall be considered at risk for an activity with respect to amounts including -- (A) the amount of money and the adjusted basis of other property contributed by the taxpayer to the activity, and (B) amounts borrowed with respect to such activity (as determined under paragraph (2)). (2) BORROWED AMOUNTS. -- For purposes of this section, a taxpayer shall be considered at risk with respect to amounts borrowed for use in an activity to the extent that he -- (A) is personally liable for the repayment of such amounts, or (B) has pledged property, other than property used in such activity, as security for such borrowed amount (to the extent of the net fair market value of the taxpayer's interest in such property.) No property shall be taken into account as security if such property is directly or indirectly financed by indebtedness which is secured by property described in paragraph (1). (3) CERTAIN BORROWED AMOUNTS EXCLUDED. -- For purposes of paragraph (1)(B), amounts borrowed shall not be considered to be at risk with respect to an activity if such amounts are borrowed from any person who -- (A) has an interest (other than an interest as a creditor) in such activity, or (B) has a relationship to the taxpayer specified within any one of the paragraphs of section 267(b). * * *↩
5. Statements by the Staff of the Joint Committee are not considered to be legislative history. Miller v. Commissioner,70 T.C. 448, 459 (1978). But see Pritchett v. Commissioner,827 F.2d 644, 647↩ (1987).
6. The limitations imposed by the at risk rules are to be applied at the end of each taxable year; thus, the relevant date for our inquiry into T & P, Ltd. and its partners is December 31, 1976. Section 465(a); see also sec. 1.465-1(a), Prop. Income Tax Regs., 44 Fed. Reg. 32239↩ (June 5, 1979).