JOHN E. AND ELLEN G. CALLAHAN, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 48374-86, 1380-87,     Filed March 18, 1992.
1390-87, 1471-87,
1855-87, 1904-87,
1927-87, 4227-87,
4598-87, 4607-87,
4736-87, 5116-87.

---

[1]Cases of the following petitioners are consolidated herewith: J. Burke Gelling and Dora L. Gelling, docket No. 1380-87; Scott McKay and Heide McKay, docket No. 1390-87; Joseph Farragher and Margaret M. Farragher, docket No. 1471-87; John T. Kiggins and Patricia A. Kiggins, docket No. 1855-87; William A. Debes and Mary I. Debes, docket No. 1904-87; John L. Flynn and Gene Flynn, docket No. 1927-87; Phillip B. Rooney and Suzanne V. Rooney, docket No. 4227-87; Patrick H. Hughes and M. Brigid Hughes, docket No. 4598-87; Michael J. Corey and Cathleen M. Corey, *docket No. 4607-87; Richard L. Halpin, Jr., and Suzanne D. Halpin, docket No. 4736-87; and* Donald L. Wheeler and Ottelene C. Wheeler, docket No. 5116-87.

*J. David Sanner,* for petitioner.
*James R. McCann,* for respondent.

## OPINION

GERBER, *Judge:* This case is before the Court on the parties' cross-motions for partial summary judgment pursuant to Rule 121[2] on the issue of whether petitioners, as limited partners, were at risk within the meaning of section 465 for amounts in excess of their actual cash contributions to the partnership for tax years 1980, 1981, and 1982.

Respondent determined deficiencies in income tax against petitioners resulting from respondent's disallowance of reported losses from option straddle transactions. Respondent also determined that petitioners are liable for increased interest under section 6621(c), formerly section 6621(d), relating to substantial underpayments attributable to tax-motivated transactions.

The issue for our consideration is whether petitioners, as limited partners, were at risk within the meaning of section 465 for amounts in excess of their actual cash contributions pursuant to an overcall provision of the partnership agreement. If petitioners are not at risk for amounts greater than their actual cash contributions, then deductions for their distributive share of partnership losses are limited to the amounts of their actual cash contributions to the partnership.

---

[2]Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Summary judgment under Rule 121 is derived from rule 56 of the Federal Rules of Civil Procedure. It is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual questions. *Cox v. American Fidelity & Casualty Co.,* 249 F.2d 616, 618 (9th Cir. 1957); *Shiosaki v. Commissioner,* 61 T.C. 861, 862 (1974). Under Rule 121(b), a motion for summary judgment is granted when it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Either party may move for summary judgment in its favor on all or part of the issues in controversy. Rule 121(a). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Jacklin v. Commissioner,* 79 T.C. 340, 344 (1982); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). In considering a motion for summary judgment, we construe the facts in a manner most favorable to the party opposing the motion. *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985).

It is respondent's position that even if petitioners as limited partners had sufficient basis to absorb the losses from option straddle transactions, they were not, as a matter of law, at risk for any amount in excess of their capital contributions. Petitioners on the other hand contend that the limited partners were at risk for three times their capital contributions pursuant to the terms of the partnership agreement.

## Background

Petitioners were partners in JEC Options (JEC), a limited partnership organized under the laws of the State of Illinois. JEC was organized by a limited partnership agreement dated September 2, 1980. The agreement (first agreement) and certificate of limited partnership were filed with the Illinois secretary of state on or about December 19, 1980. The first agreement was amended three times, and the amended agreements[3] with accompanying certificates of limited partnership were filed with the Illinois secretary of state. The general partners of JEC were petitioners John and Ellen Callahan (the Callahans). JEC was formed for the purpose of

---

[3]For convenience we will refer to the first agreement and the three amended agreements collectively as the agreements.

engaging in the trading of investment securities, including put and call options and commodity futures contracts (long and short)[4] with partnership funds and funds which might be borrowed. Under the partnership agreements, JEC was prohibited from engaging in any other business.

The agreements defined the capital contributions of the original limited partners and the general partners as "original capital contributions" and the capital contributions of the additional limited partners as "additional capital contributions". The agreements contained an overcall provision[5] which provided as follows:

> Each Partner shall be obligated to make capital contributions in excess of his Original Capital Contribution and Additional Capital Contribution upon the request of the General Partner solely for the purpose of paying or satisfying liabilities or expenses of the Partnership, but only to the extent that such liabilities and expenses cannot be paid out of Partnership assets. Such capital contributions shall be hereinafter referred to as "New Capital Contributions". Each such call for New Capital Contributions shall be made by written notice to each of the Partners no less than 30 days prior to the due date for such New Capital Contributions and shall be allocated among the Partners in accordance with their prior capital contributions. Each Partner shall be personally liable for his share of such New Capital Contributions. The maximum amount of a New Capital Contribution for each Partner under this Section 3.5 shall be an amount equal to 300 percent of such Partner's Original Capital Contributions and Additional Capital Contributions. Each Partner hereby agrees that his obligation to make any New Capital Contributions pursuant to this Section 3.5 is made for the benefit of and may be enforced by any person entitled to payment or to require satisfaction of the obligations of the Partnership with respect to which such New Capital Contributions may be required under this Section 3.5. If any Partner shall default in the payment of any New Capital Contribution, the General Partners may, at any time not earlier than ten days after giving written notice of such default, take any action that may be necessary to enforce such obligation and the defaulting Partner shall be responsible and shall indemnify and hold harmless the Partnership from and against any and all damages, costs, liabilities and expenses arising out of such default. *Subject to the rights of creditors of the Partnership and provided the assets of the Partnership exceed the expenses and liabilities for which a New Capital Contribution may be required, a Partner may, at any*

---

[4]This Court has previously addressed "commodity tax straddles"; for a discussion of the fundamentals of such transactions, see, e.g., *Smith v. Commissioner,* 78 T.C. 350 (1982); *Resser v. Commissioner,* T.C. Memo. 1991-423.

[5]The overcall provision is provided in section 3.2 of the first agreement and section 3.5 of the amended agreements. The overcall provision of the amended agreements is substantially the same as that of the first agreement.

*time, elect by written notice to reduce the amount by which he is required to make New Capital Contribution.* [Emphasis added.]

The agreements limit further each limited partner's liability as follows:

Notwithstanding anything to the contrary herein contained, the liability of any Limited Partner for any losses or obligations of the Partnership shall be limited to the extent of his Original Capital Contribution, Additional Capital Contribution and New Capital Contribution.

The general partners never requested new capital contributions from the limited partners in accordance with the overcall provision. No limited partner elected to reduce the amount of his new capital contribution.

## *Discussion*

Generally, a partner may deduct the partner's distributive share of losses of a partnership in which he is a member. Sec. 702(a). However, a partner's distributive share of partnership loss is allowed only to the extent of the partner's adjusted basis in the partnership at the end of the year in which the partnership incurred the loss. Sec. 704(d). A partner's adjusted basis in his partnership interest is the amount of money and the adjusted basis of other property contributed to the partnership, increased or decreased by the partner's distributive share of income, loss, and applicable expenditures. Sec. 705(a)(1), (2). The basis of an interest in a partnership acquired by a contribution of property, including money, is the amount of money and the adjusted basis of the property to the partner at the time of contribution. Sec. 722. Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the partner's assumption of partnership liabilities, is considered a contribution of money by the partner to the partnership. Sec. 752.

Section 465 imposes additional limitations on a partner's distributive share of partnership losses. Under section 465, losses relating to activities engaged in by a taxpayer in carrying on a trade or business or for the production of income are allowed as deductions only to the extent that the taxpayer is at risk financially with respect to the activities. Sec. 465(a)(1),

(c)(3).[6] Investors generally are considered to be at risk financially to the extent they contribute money to the activities. Sec. 465(b)(1)(A). In addition, investors are considered to be at risk financially with respect to third-party debt obligations relating to the activities to the extent they are personally liable for repayment of the debt obligations or to the extent they have pledged property, other than property used in the activities as security for the debt obligations. Sec. 465(b)(1)(B), (b)(2).[7] The determination of whether a taxpayer is to be regarded as at risk on a particular debt obligation is to be made at the end of each taxable year. Sec. 465(a)(1); *Levy v. Commissioner,* 91 T.C. 838, 862 (1988).

Concerning third-party debt obligations, investors will be regarded as personally liable under section 465(b)(2)(A) in the event funds from the investment activities are not available to repay the obligations, if the investors are ultimately and personally liable to repay the obligations. The critical inquiry involves who is the obligor of last resort, and the scenario that controls is the worst case scenario. The fact that the partnership or other partners remain in the chain of liability should have no effect on the at-risk amount of the parties who do have the ultimate obligation. In determining which investors are ultimately financially responsible for the obligations, the substance of the transaction controls. *Pritchett v. Commissioner,* 827 F.2d 644, 647 (9th Cir. 1987), revg. and remanding 85 T.C. 580 (1985); *Thornock v. Commissioner,* 94 T.C. 439, 448 (1990); *Krause v. Commissioner,* 92 T.C. 1003 (1989);

---

[6]Sec. 465 was added to the Internal Revenue Code by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, and applies to tax years beginning after Dec. 31, 1975. Sec. 465(a) makes no reference to partners, partnerships, or joint ventures, but it is clear that sec. 465 was intended to apply to those activities. See *Krause v. Commissioner,* 92 T.C. 1003, 1017 n.2 (1989); *Bennion v. Commissioner,* 88 T.C. 684, 691 n.6 (1987); *Melvin v. Commissioner,* 88 T.C. 63, 70 (1987), affd. 894 F.2d 1072 (9th Cir. 1990).

[7]Sec. 465(b)(2) provides as follows:

(2) BORROWED AMOUNTS.—For purposes of this section, a taxpayer shall be considered at risk with respect to amounts borrowed for use in an activity to the extent that he—

    (A) is personally liable for the repayment of such amounts, or

    (B) has pledged property, other than property used in such activity, as security for such borrowed amount (to the extent of the net fair market value of the taxpayer's interest in such property).

No property shall be taken into account as security if such property is directly or indirectly financed by indebtedness which is secured by property described in paragraph (1).

*Melvin v. Commissioner,* 88 T.C. 63, 75 (1987), affd. per curiam 894 F.2d 1072 (9th Cir. 1990).

Petitioners contend that pursuant to the overcall provision the limited partners were at risk for amounts exceeding their initial capital contributions because the limited partners were required, if called upon by the general partners, to make new capital contributions if necessary to pay partnership liabilities and expenses. Respondent contends that the limited partners were not at risk for amounts in excess of their initial cash contributions because the obligation to make additional contributions under the overcall provision was contingent and illusory. We agree with respondent.

Both parties have relied upon *Pritchett v. Commissioner, supra,* in support of their respective positions. In *Pritchett,* a limited partnership executed a recourse note in connection with a turnkey drilling agreement. Only the general partners were personally liable on the notes. In addition to their initial cash contributions, however, the limited partners agreed that in the event that the notes were not paid in full at maturity they would make additional cash contributions if called upon to do so by the general partners. This Court found that the limited partners were contingently obligated to make future contributions only in the event partnership revenues were insufficient to satisfy the note at maturity *and* the general partners exercised their discretion to make the cash call. In concluding that the limited partners were not at risk because they bore no current personal liability we stated:

Our holding comports with the common law contract principle that a contingent debt does not reflect a present liability. A debt is an unconditional promise to pay a sum certain in money or money's worth on demand or on a specific date. As long as it is subject to a contingency, it is not a debt on which present liability has accrued. [*Pritchett v. Commissioner,* 85 T.C. at 588; citation omitted.]

The Court of Appeals for the Ninth Circuit reversed, concluding that the limited partners' obligation was unavoidable because the contracts made the cash call mandatory and the "economic reality" insured that the general partners would enforce their rights. We find the nature of the limited partners' contractual rights and obligations in this case is distinguish-

able from that in *Pritchett.*[8] The debt here is subject to a contingency. The limited partners' liability is more contingent than the promise to pay in *Pritchett.* In *Pritchett* it was the general partners who could unilaterally waive the cash-call requirement. Here, pursuant to section 3.5 of the agreement it was the limited partners who possessed the right and sole discretion to waive the overcall requirement. The general partners could exercise the overcall provision only if the liabilities or expenses of the partnership could not be paid out of partnership assets. Moreover, 30 days' written notice was also required from the general partners prior to an overcall. Accordingly, so long as the partnership was solvent, the limited partners could elect out of the overcall provision. In this manner, a limited partner could successfully elect out of the overcall provision in anticipation of an impending cash call. Unlike the mandatory cash-call provision in *Pritchett,* the obligation of the limited partners in this case is not unavoidable. Therefore, the limited partners are not at risk within the meaning of section 465.

In light of the foregoing,

> *An appropriate order denying petitioners' motion for partial summary judgment and granting respondent's motion for partial summary judgment will be issued.*

---

[8]Although this case is distinguishable from *Pritchett v. Commissioner,* 827 F.2d 644 (9th Cir. 1987), revg. and remanding 85 T.C. 580 (1985), we also note that as this case is appealable to the Court of Appeals of the Seventh Circuit we nonetheless would not be bound by the Ninth Circuit's opinion. *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).