122 T.C. No. 17

UNITED STATES TAX COURT

IPO II, A PARTNERSHIP, GERALD R. FORSYTHE, TAX MATTERS PARTNER,
Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14500-02.                Filed April 23, 2004.


        IPO II, an LLC but treated as a partnership for
Federal income tax purposes, is owned by IO, an S
corporation, and F, an individual.  F owns 100 percent
of the outstanding stock in IO, 70 percent of the
outstanding stock of IE, an S corporation, and 63
percent of the outstanding stock of IP, a C
corporation.  F's daughters own the remaining 30
percent of the outstanding stock of IE.

        IPO II purchased an aircraft, and the loan was
guaranteed by F, IE, and IP, but not IO.

        R determined that the liability incurred in the
purchase of the aircraft was recourse and fully
allocable to F.  P argues that part of the liability
should be allocated to IO because it is related to IE,
a guarantor of the loan.

     <u>Held</u>:  All of the liability is allocable to F because IO cannot be related to F or to IE for purposes of determining the allocation of the recourse liability pursuant to sec. 1.752-4(b)(2)(iii), Income Tax Regs.


<u>David J. Duez</u>, <u>Thomas C. Borders</u>, and <u>Ann M. Chavie</u>, for petitioner.

<u>Jason W. Anderson</u>, for respondent.


OPINION


HAINES, <u>Judge</u>:  Respondent issued a notice of final partnership administrative adjustment (FPAA) to Gerald R. Forsythe, as tax matters partner (TMP) for IPO II, determining adjustments to IPO II's Federal tax returns for 1998 and 1999 (years in issue).  For clarification purposes, we shall refer to Gerald R. Forsythe in his capacity as TMP as petitioner; we shall refer to Gerald R. Forsythe in his capacity as owner of IPO II and the other entities described below as Mr. Forsythe.

After concessions,[1] the issue for decision is whether any of the recourse liability incurred by IPO II with respect to the

---

[1]  The parties provided the following stipulations:  (1) IPO II is not entitled to claim a deduction for salaries and wages of $104,000 for each of the years in issue; and (2) respondent concedes that IPO II correctly reported the principal business activity as "Chartering Airplane", the principal product or service as "Chartering Airplane", the Business Code number, and the loss from said activity as an ordinary loss from trade or business activities.  As a result, respondent conceded that IPO II correctly reported ordinary losses from said activity of $1,385,457 in 1998 and $752,824 in 1999.

purchase of an aircraft is allocable to Indeck Power Overseas Ltd. (Indeck Overseas).

## Background

The parties submitted this case fully stipulated pursuant to Rule 122.[2] The stipulation of facts and the attached exhibits are incorporated herein by this reference.

IPO II is a limited liability company organized in 1996 under the Illinois Limited Liability Company Act. At the time the petition was filed, IPO II's principal place of business was Wheeling, Illinois.

IPO II was treated as a partnership for Federal income tax purposes for the years in issue. The members of IPO II are Mr. Forsythe and Indeck Overseas. Indeck Overseas is an S corporation in which Mr. Forsythe owned 100 percent of the outstanding shares during the years in issue. The members' interests in the profits and losses of IPO II were allocated during the years in issue, and are currently allocated, as follows: Indeck Overseas, 99 units; Mr. Forsythe, 1 unit.

IPO II's operating agreement (operating agreement) provides the following, in relevant part:

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code relevant to the years in issue. Amounts are rounded to the nearest dollar.

2.4 <u>Liability to Third Parties</u>. Except as otherwise provided by the Act,[3] the debts, obligations and liabilities of the Company, whether arising in contract, tort, strict liability or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member or Manager of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or acting as a Manager of the Company.

\* \* \* \* \* \* \*

5.3 <u>Liability of Members to the Company</u>. A Member shall be liable to the Company for capital contributions as and to the extent provided by the Act.

\* \* \* \* \* \* \*

7.1 <u>Allocations of Profits and Losses</u>. All profits and losses of the Company (which for all purposes of this Agreement shall mean the Company's net income and net loss as determined for federal income tax purposes) for each fiscal year (or part thereof) shall be allocated to the Members for both financial accounting and income tax purposes in proportion to the number of Units held by each respective Member. Each item of income, gain, loss, deduction, credit or tax preference of the Company entering into the computation of such profits or losses, or applicable to the period during which any such profits or losses were realized, shall be considered allocated between the Members in the same proportion as profits and losses are allocated to each Member. Profits and losses of the Company shall be determined for each fiscal year in accordance with the accounting method followed by the Company for federal income tax purposes, applied in a consistent manner.

Mr. Forsythe also owns 70 percent (i.e., 28 of 40 shares) of the outstanding shares of Indeck Energy Services, Inc. (Indeck Energy). Indeck Energy was a C corporation in 1997 but elected

---

[3] The operating agreement defines "Act" as "the Illinois Limited Liability Company Act, effective January 1, 1994, as amended from time to time."

to be treated as an S corporation for the years in issue.  The remaining outstanding shares in Indeck Energy (i.e., 12 shares) are owned equally by Mr. Forsythe's children:  Michelle Fawcett, Monica Breslow, Marsha Fournier, and Melissa Forsythe.

Mr. Forsythe also owned 63 percent of the outstanding shares of Indeck Power Equipment Co. (Indeck Power), a C corporation, during the years in issue.

On December 27, 1996, IPO II purchased a Cessna Citation VII aircraft for $9,205,800 and two Garrett Allied Signal engines for $200,375 (collectively, the aircraft) from the Cessna Aircraft Co.  The total purchase price of the aircraft (i.e., $9,406,175) was funded by a loan from Nationsbanc Leasing Corp. of North Carolina (Nationsbanc).  The loan was evidenced by a secured promissory note dated December 27, 1996, for the total purchase price, executed by IPO II, as obligor, to the benefit of Nationsbanc.

To secure the loan, IPO II and Nationsbanc entered into an Aircraft Loan and Security Agreement (the loan and security agreement) on December 27, 1996.  The loan and security agreement listed the following parties as "Guarantors" of the loan:  Indeck Energy, Indeck Power, and Mr. Forsythe.  Indeck Overseas was not listed as a guarantor of the loan.

In connection with the loan, Mr. Forsythe, Indeck Energy, and Indeck Power each entered into a guaranty agreement with

Nationsbanc (the Forsythe guaranty, the Indeck Energy guaranty,
and the Indeck Power guaranty, respectively).  Each guaranty
provided in relevant part:

SECTION 1.  Guarantee.  * * *  The Guarantor does
hereby unconditionally guarantee to the Secured Party and
its successors, endorsees, transferees and assigns, without
offset or deduction, the following:

(a)  the prompt payment when due, whether by
acceleration or otherwise, of all amounts payable by
the Debtor pursuant to or under the Security Agreement,
the Note and all related agreements (collectively, the
"Basic Agreements"); * * *

(b)  the punctual and faithful performance by Debtor of
each and every duty, agreement, covenant and obligation
of Debtor under and in accordance with the terms of the
Basic Agreements and all other obligations of Debtor to
the Secured Party arising under the Basic Agreements or
any of the transactions related thereto.  The Guarantor
does hereby agree that in the event Debtor does not or
is unable to pay or perform in accordance with the
terms of the Basic Agreements for any reason
(including, without limitation, the liquidation,
dissolution, receivership, insolvency, bankruptcy,
assignment for the benefit of creditors,
reorganization, arrangement, composition or
readjustment of, or other similar proceedings affecting
the status, existence, assets or obligations of Debtor
or the limitation of damages for the breach, or the
disaffirmance of, any Basic Agreement in such
proceeding) it will pay the sums, or amounts equal
thereto, which Debtor is (or, but for any such reason,
would be) obligated to pay at the times specified in
the Basic Agreements, whether by acceleration or
otherwise (it being the intention hereof that the
Guarantor shall pay to the Secured Party, as a payment
obligation directly due from the Guarantor to the
Secured Party, amounts equal to all amounts which
Debtor shall fail faithfully and properly to pay when
due under the Basic Agreements, whether by acceleration
or otherwise), or otherwise provide for and bring about
promptly when due such payment and the performance of
such duties, agreements, covenants and obligations of
Debtor under the Basic Agreements.  The Guarantor

acknowledges that it is fully aware of, and consents to the terms and conditions of the Security Agreement, the Note and each of the other Basic Agreements.  The obligations of the Debtor hereby guaranteed are herein called the "Obligations";

\*     \*     \*     \*     \*     \*     \*

SECTION 3.  No Subrogation.  \* \* \*  The Guarantor hereby further irrevocably waives all contractual, common law, statutory or other rights of reimbursement, contribution, exoneration or indemnity (or any similar right) from or against the Debtor or any other party which may have arisen in connection with this Guarantee.

Additionally, as required by the loan and security agreement, IPO II and Indeck Energy were issued an aircraft insurance policy with respect to the aircraft.  The promissory note, loan and security agreement, and guaranties were recorded and filed in due course.

In 1997, petitioner was appointed TMP of IPO II, and Indeck Overseas was appointed manager of IPO II.  Both members continue to serve in their respective capacities.

Petitioner filed a Form 1065, U.S. Partnership Return of Income, on behalf of IPO II for each of the years in issue.  On July 12, 2002, respondent issued the FPAA to petitioner, as TMP of IPO II, with respect to the years in issue.  In the FPAA, respondent determined, inter alia, that 100 percent of the recourse liability shown on the Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., was allocable to Mr. Forsythe,

and, therefore, none of the liability was allocable to Indeck Overseas.[4]

On September 11, 2002, petitioner filed a Petition for Readjustment of Partnership Items Under Code Section 6226 with the Court for a redetermination of the adjustments set forth in the FPAA.  Petitioner alleged, inter alia, that respondent erred in the determination that the liability shown on the respective Schedules K-1 for the years in issue is fully allocable to Mr. Forsythe, and in no part to Indeck Overseas.

## Discussion

### I.  Burden of Proof

As a preliminary matter, petitioner argues that respondent's "primary" position, i.e., that the liability reflected on the Schedules K-1 is nonrecourse, is entitled to the presumption of correctness, and respondent bears the burden of going forward with evidence and the burden of persuasion on the "alternative" position; i.e., that the liability is recourse and fully allocable to Mr. Forsythe.

We do not find that the resolution of this case depends on which party has the burden of proof.  On the basis of evidence in the record, we hold that the recourse liability is fully

---

[4]  Respondent initially determined in the FPAA that the liability listed on the Schedules K-1 from the purchase of the aircraft was a nonrecourse liability, and alternatively determined that the liability was recourse and fully allocable to Mr. Forsythe.  Respondent has since conceded that this liability was recourse.

allocable to Mr. Forsythe for the reasons discussed below.

## II. Allocation of Recourse Liability

A partner's distributive share of partnership loss is allowed only to the extent of the adjusted basis of the partner's interest in the partnership at the end of the partnership year in which such loss occurred. Sec. 704(d). As relevant here, the partner's adjusted basis in the partnership interest is the basis of such interest determined under section 722, increased or decreased by the partner's distributive share of income, loss, and applicable expenditures. Sec. 705(a)(1) and (2). The basis of an interest in a partnership acquired by a contribution of property, including money, is the amount of money and the adjusted basis of such property to the partner at the time of contribution, increased by the amount of any gain recognized under section 721(b) at the time. Sec. 722. Any increase in a partner's share of liabilities of the partnership is considered a contribution by such partner to the partnership, and, consequently, increases the basis of the partner's interest in the partnership. Sec. 752(a); sec. 1.752-1(b), Income Tax Regs.; see HGA Cinema Trust v. Commissioner, 950 F.2d 1357, 1362 (7th Cir. 1991), affg. T.C. Memo. 1989-370; Callahan v. Commissioner, 98 T.C. 276, 280 (1992).

The regulations guide our allocation of the instant partnership recourse liability. See sec. 7805(a); sec. 1.752-

5(a), Income Tax Regs.  Section 1.752-1(a)(1), Income Tax Regs.,

defines a partnership liability as a recourse liability "to the

extent that any partner or related person bears the economic risk

of loss for that liability under § 1.752-2."  Section 1.752-2,

Income Tax Regs., provides the test for determining whether a

partner or related person bears the economic risk of loss.  The

determination to be made is whether, if the partnership were

constructively liquidated, the partner or related person would be

obligated to make a payment when the liability became due and

payable.  Sec. 1.752-2(b)(1), Income Tax Regs.

In a constructive liquidation, the regulations provide that

the following events are deemed to occur:

> (i) All of the partnership's liabilities become payable in full;

> (ii) With the exception of property contributed to secure a partnership liability (see § 1.752-2(h)(2)), all of the partnership's assets, including cash, have a value of zero;

> (iii) The partnership disposes of all of its property in a fully taxable transaction for no consideration (except relief from liabilities for which the creditor's right to repayment is limited solely to one or more assets of the partnership);

> (iv) All items of income, gain, loss, or deduction are allocated among the partners; and

> (v) The partnership liquidates.

Sec. 1.752-2(b)(1)(i)-(v), Income Tax Regs.

In a constructive liquidation, the determination of which

partner or related person has an obligation to make a payment is

"based on the facts and circumstances at the time of the determination." Sec. 1.752-2(b)(3), Income Tax Regs. Such facts and circumstances take into account all statutory and contractual obligations relating to the partnership liability, including contractual obligations outside of the partnership agreement such as guaranties. Id. Further, the regulations assume that all partners and related persons who have obligations actually perform those obligations, "unless the facts and circumstances indicate a plan to circumvent or avoid the obligation." Sec. 1.752-2(b)(6), Income Tax Regs.

Initially, we must determine whether Indeck Overseas, as a member of IPO II, was required by statute, by IPO II's operating agreement, or by any other contractual arrangements it entered into to directly pay the Nationsbanc loan or any other obligations of IPO II. The Illinois Limited Liability Company Act (LLC Act) provides, in relevant part:

§ 10-10. Liability of members and managers.

(a) Except as otherwise provided in subsection (d) of this Section, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.

* * * * * * *

(d) All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations, or liabilities of the company if:

> (1) a provision to that effect is contained in the articles of organization; and
>
> (2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision.

805 Ill. Comp. Stat. Ann. 180/10-10 (West Supp. 2003). Section 2.4 of the operating agreement, quoted previously, provides that no member or manager of IPO II is obligated for any debts, obligations, or liabilities of IPO II. Moreover, the LLC Act does not establish a statutory obligation on the part of Indeck Overseas to contribute to IPO II to meet IPO II's obligations, either during its operation or upon its liquidation and dissolution, unless a promise is otherwise made by Indeck Overseas to contribute. See 805 Ill. Comp. Stat. Ann. 180/20-5, 180/25-45 (West Supp. 2003). The record is devoid of any evidence of a promise by Indeck Overseas to contribute to IPO II or to otherwise directly become responsible for IPO II's debts, obligations, or liabilities including the Nationsbanc loan. Indeck Overseas did not guarantee the Nationsbanc loan. Consequently, there is no evidence that in a constructive liquidation Indeck Overseas would directly bear the economic risk of loss for the Nationsbanc loan.

A finding that Indeck Overseas did not directly bear economic risk of loss does not end the inquiry. Economic risk of loss borne by a "related person" can also establish a recourse liability for Indeck Overseas. See sec. 1.752-2(a), Income Tax

Regs. The Nationsbanc loan was guaranteed by Mr. Forsythe, Indeck Energy, and Indeck Power.  Indeck Energy and Indeck Power have no ownership interests in either Indeck Overseas or IPO II.  Mr. Forsythe, on the other hand, is at least a majority owner in Indeck Energy, Indeck Power, and Indeck Overseas.  Even though Indeck Overseas did not guarantee the Nationsbanc loan, we must inquire into whether the guaranty by Mr. Forsythe, Indeck Power, or Indeck Energy can be attributed to Indeck Overseas.

Petitioner argues that the liability incurred as a result of the purchase of the aircraft is recourse with respect to each member:  fully recourse as to Mr. Forsythe as a result of the Forsythe guaranty, and fully recourse as to Indeck Overseas as a result of its being related to Indeck Energy, a guarantor, through Mr. Forsythe's common ownership.

Respondent argues that the entire recourse liability incurred with the purchase of the aircraft should be allocated to Mr. Forsythe because:  (1) Nationsbanc had no recourse against Indeck Overseas for the loan; and (2) for purposes of determining the allocation of the liability, Mr. Forsythe and Indeck Overseas cannot be related parties, and, therefore, Indeck Overseas and Indeck Energy cannot be considered related persons through the common ownership by Mr. Forsythe.

The regulations define a "related person" as a person having a relationship to a partner which is specified in section 267(b)

or 707(b)(1), subject to certain modifications. Secs. 1.752-1(a)(3), 1.752-4(b)(1), Income Tax Regs. Those modifications include substituting "80 percent or more" for "more than 50 percent" each place it appears in those sections. Sec. 1.752-4(b)(1)(i), Income Tax Regs.

However, in determining whether a partner bears economic risk of loss on a partnership liability, the regulations also provide the following exception:

> (iii) <u>Related partner exception</u>. Notwithstanding paragraph (b)(1) of this section (which defines related person), persons owning interests directly or indirectly in the same partnership are not treated as related persons for purposes of determining the economic risk of loss borne by each of them for the liabilities of the partnership. This paragraph (iii) does not apply when determining a partner's interest under the de minimis rules in § 1.752-2(d) and (e).

Sec. 1.752-4(b)(2)(iii), Income Tax Regs. Both parties dispute the effect of this exception (related partner exception) in the determination of whether Indeck Overseas bore any economic risk of loss with regard to the liability incurred with the purchase of the aircraft.

We interpret the policy behind the related partner exception as preventing the shifting of basis from a party who bears actual economic risk of loss to one who does not. This means that losses are allowed, to the extent of basis, to the party who is actually exposed to the risk of economic loss through the application of statute, organizational documents, or

other contractual arrangements.  It also means that, with regard to recourse liabilities, the shifting of basis cannot occur without a concomitant shifting of the underlying risk of economic loss.

Mr. Forsythe bore the economic risk of loss with regard to the recourse liability because he personally guaranteed the full amount of the Nationsbanc loan and had no rights to "reimbursement, contribution, exoneration or indemnity (or any similar right)".  See sec. 1.752-2(b)(3)(i), Income Tax Regs. Pursuant to the related partner exception, Mr. Forsythe and Indeck Overseas, as common owners of interests in IPO II, may not be treated as related persons for purposes of all determinations of economic risk of loss.  Therefore, Mr. Forsythe's economic risk of loss as guarantor cannot be attributed to Indeck Overseas, as conceded by petitioner.

Petitioner argues, however, that Indeck Overseas did bear economic risk of loss for the recourse liability through the Indeck Energy guaranty.  Petitioner argues that Indeck Overseas can be related to Indeck Energy through Mr. Forsythe for purposes of determining economic risk of loss.  We disagree.

Indeck Overseas is only related to Indeck Energy via its "relationship" with Mr. Forsythe.  See sec. 267(b)(11); sec. 1.752-4(b)(1), Income Tax Regs.  The related partner exception begins with the language "Notwithstanding paragraph (b)(1) of

this section (which defines related person)".  The related partner exception overrides the application of section 267(b)(11) and section 1.752-4(b)(1), Income Tax Regs.  Pursuant to the related partner exception, this "relationship" between Indeck Overseas and Mr. Forsythe is severed for purposes of determining whether Indeck Overseas bears an economic risk of loss for any of IPO II's recourse liability.

We conclude that Indeck Overseas and Indeck Energy are not related parties for purposes of determining whether Indeck Overseas bore any economic risk of loss with regard to IPO II's liability for the aircraft because:  (1) Indeck Overseas is not related to Mr. Forsythe pursuant to the related partner exception; and (2) Indeck Overseas is related to Indeck Energy only through Mr. Forsythe, and that relationship is not recognized for purposes of our determination.  To hold otherwise would be to allow attribution of economic risk of loss indirectly even though it cannot be attributed directly.  In the instant case involving a recourse liability, the shifting of economic risk of loss to achieve an increased basis cannot be accomplished through attribution.  Therefore, we hold that none of the recourse liability incurred by IPO II with respect to the purchase of the aircraft is allocable to Indeck Overseas.

We have considered all of the parties' contentions, arguments, and requests that are not discussed herein, and we

conclude that they are without merit or irrelevant.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.