NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0294n.06
Filed: April 27, 2007

Nos. 05-2616, 05-2617, 05-2619

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HUBERT ENTERPRISES, INC. AND SUBSIDIARIES and HUBERT HOLDING COMPANY, | ) ) ) ) | |
| Petitioners-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES TAX COURT |
| v. | ) ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) ) ) | |
| Respondent-Appellee. | ) ) | |

Before: KENNEDY and GIBBONS, Circuit Judges; and ALDRICH, District Judge.[*]

JULIA SMITH GIBBONS, Circuit Judge. Petitioners-appellants Hubert Enterprises, Inc.,

and its subsidiaries (collectively "HEI") and Hubert Holding Company ("HHC") challenge the Tax

Court's denial of their petition for a redetermination of deficiencies assessed against them by the

Internal Revenue Service. Petitioners' appeal turns on two aspects of the Tax Court's decision. HEI

challenges the Tax Court's determination that certain advances of capital made by HEI to another

entity constituted a constructive dividend, precluding HEI's deduction of those amounts–either as an

ordinary business loss or as a bad debt–even though those sums were not repaid. HHC challenges

_____

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1

the Tax Court's determination that amendments made to the operating agreement for a limited liability company of which HHC was a member did not place HHC "at risk" within the meaning of I.R.C. § 465 for the recourse debt of that company and the resulting denial of a deduction for that amount. For the reasons that follow, we affirm the Tax Court's decision denying HEI's petition for a redetermination, vacate the Tax Court's decision as to HHC, and remand the case for further proceedings consistent with this opinion.

I.

HEI is the parent corporation of a group of affiliated companies that filed joint corporate tax returns for fiscal years 1997-1999. At all times relevant to this appeal, the Hubert Family Trust ("HFT"), a trust organized by members of the Hubert family, owned the outstanding shares of HEI. The trust agreement named certain controlling donors, including Howard Thomas, also an HFT Trustee, Edward Hubert, George Hubert Jr., and Sharon Hubert, and one additional trustee, James Stethem. A number of these individuals occupied managerial positions in HEI.

Arbor Lake of Sarasota LLC ("ALSL") was a Wyoming limited liability company organized in 1995 for the purpose of exploiting condominium development opportunities in Sarasota, Florida. Ownership units were divided as follows: George Hubert, Jr. (20), Edward Hubert (20), Sharon Hubert (20), Howard Thomas (20), Sun Valley Investments (10), J. Gregory Ollinger (5), James Stethem (5). Sun Valley Investments was wholly owned by Stethem and Thomas, and only Thomas and Stethem made capital contributions to ALSL.

ALSL did not undertake the development itself; it entered into a Florida limited partnership known as Arbor Lake Development ("ALD"). ALSL retained a 97% interest as general partner in ALD. ALD was unable to secure immediate financing for construction and instead negotiated a loan

2

contingent on the presale of a specified number of units. HEI provided initial financing for the project totaling over $2.4 million, secured by a promissory note executed by ALSL (the "Grid Note"). The Grid Note had no fixed maturity date, was a demand note, and called for interest to be payable at the applicable federal rate. HEI took no security interest in the assets of ALSL or its members. ALSL members did not personally guarantee the sums advanced, and with the exception of one payment of just under $44,000, ALSL never paid HEI any amount of principal or interest on the note. The venture ultimately failed, and HEI claimed a bad debt deduction on its 1997 income tax return for the amount of principal unpaid on the Grid Note.

The IRS disallowed the deduction and sent HEI a statutory notice of deficiency. HEI filed a petition with the Tax Court seeking a redetermination of the IRS's deficiency amount. The Tax Court found that the transaction between HEI and ALSL did not create *bona fide* debt and consequently that HEI was not entitled to a bad debt deduction under § 166 of the Internal Revenue Code. The Tax Court also denied HEI's alternative claim for relief, holding that HEI was not entitled to a deduction for an ordinary loss because the defaulted note did not constitute HEI's lost capital. Instead, the Tax Court found that the sums advanced to ALSL by HEI under the Grid Note were constructive dividends paid for the benefit of HEI shareholders.

A.

This court reviews the Tax Court's findings of fact for clear error and its legal determinations *de novo*. *Indmar Prods. Co., Inc. v. Comm'r*, 444 F.3d 771, 777 (6th Cir. 2006). HEI argues that this circuit has found the question of classifying business advances as debt or equity under the Internal Revenue Code to be a mixed question of fact and law, requiring the court to apply a mixed standard of review. While HEI does point us to authority that lends some support to its position, this question

3

has been settled definitively by a prior panel of this court, and that precedent is binding. "The circuits are split on whether the debt/equity question is one of fact or law, or a mixed question of fact and law. Earlier panels of this court have held that the question is one of fact. Accordingly, we review the Tax Court's findings for clear error." *Id.* (collecting cases).

Under clear error review, we defer to the Tax Court's factual findings. *Id.* "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 777-78 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). There are limits to this deference, however, and we must set aside factual findings if, upon review of the record, we are left with the "definite and firm conviction that a mistake has been committed." *Id.* at 778 (citation and internal quotation marks omitted).

B.

HEI first challenges the propriety of the Tax Court's reliance on the eleven factor *Roth Steel* test in its effort to classify the advances made by HEI under the Grid Note. The law of this circuit is well-settled on this issue, and *Roth Steel* establishes the framework by which debt/equity classifications are made under the tax code. *See id.* at 777 (quoting *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625, 630 (6th Cir. 1986)).

HEI next argues that even if *Roth Steel* is the proper test, the Tax Court's classification of the Grid Note as equity rather than debt was clearly erroneous. HEI's argument on this point is unconvincing. In its decision, the Tax Court dutifully applied the *Roth Steel* test, analyzing each factor.[1] As HEI notes, the Tax Court found that all eleven factors indicated a finding that the

---

[1]Under the *Roth Steel* framework the relevant factors are:

(1) the names given to the instruments, if any, evidencing the indebtedness; (2) the

4

advances were equity, or at best, eight factors militated in favor of such a finding with three factors inapplicable to these facts. In its brief, HEI does not challenge the Tax Court's *Roth Steel* analysis as such, relying instead upon conclusory assertions that the Tax Court decision was clearly erroneous. HEI points to nothing in the record that would create even the suspicion, much less a definite and firm conviction, that the Tax Court erred. Our own review of the record similarly fails to reveal any evidence that would call the Tax Court's finding into question.

In its brief, HEI characterizes the Tax Court's decision as ultimately finding that HEI had no intention of being repaid and focusing on the risk associated with the advances made to ALSL in classifying the Grid Note. As an initial matter, there is nothing in the Tax Court's decision to suggest this is an appropriate characterization. As noted above, the Tax Court engaged in a thorough analysis of the *Roth Steel* factors, applying the relevant legal principles to the evidence presented in the record. Moreover, the existence of a generic intent to be repaid sheds little light on the debt/equity inquiry as both creditors and stakeholders, unlike donors, expect some return on their investment. HEI seeks to craft a new standard and does not appear to challenge the result reached under *Roth Steel*. HEI's dissatisfaction with the result is understandable. However, disappointment over the outcome, in and of itself, does not render the Tax Court's decision clearly erroneous.

---

presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

800 F.2d at 630.

HEI next contends that even if the Tax Court's classification of the Grid Note as creating equity were correct, HEI is entitled to a deduction for lost capital. HEI's argument is unavailing. HEI concedes that it never expressly acquired a stake in ALSL. However, according to HEI, because the Tax Court found that the economic substance of the Grid Note created equity and not a *bona fide* creditor-debtor relationship, it necessarily follows that HEI retained equity in ALSL. Under these circumstances, HEI claims, it is entitled to a deduction for loss of capital resulting from the failure of the ALSL venture.

On different facts, HEI's claim might be tenable. However, the Tax Court also determined that the Grid Note was not a capital contribution but rather a constructive dividend.[2] A constructive dividend exists where a corporation confers an economic benefit on its shareholder without any expectation of being repaid. *Hagaman v. Comm'r*, 958 F.2d 684, 690 (6th Cir. 1992). As with the debt/equity classification, whether a payment is a constructive dividend is a question of fact, reviewable by this court only for clear error. *Id.*

HEI challenges the constructive dividend determination in its reply brief, relying principally on its claim that the Grid Note was intended to create a creditor-debtor relationship. However, the Tax Court clearly rejected this claim in its *Roth Steel* analysis, finding the Grid Note did not constitute a *bona fide* debt. In finding a constructive dividend, the court noted that HEI, though advancing substantial sums to ALSL, retained no ownership interest for itself. Instead, sixty percent of the equity in ALSL was held by controlling donors of the HFT. Moreover, 95% of the membership units in ALSL were under the control of either a trustee or controlling donor of the HFT, the sole

---

[2]Before the Tax Court, HEI stipulated that from its inception through 1998, no dividends were declared, nor were there any distributions of earnings or profits made to its shareholders.

6

shareholder of HEI. HEI does not dispute these facts. Given these facts, it can hardly be said that the Tax Court clearly erred in finding that HEI tendered sums to ALSL primarily for the benefit of its shareholders, in this case, controlling donors of its sole shareholder. HEI's disagreement with the Tax Court's decision is based on its characterization of the transfers made; however, even assuming that HEI's view of the facts is reasonable, that alone would be insufficient to justify setting aside the Tax Court's findings. Where the evidence in the record could support either HEI's or the Tax Court's characterization, clear error review demands deference to the finding of the Tax Court. *See, e.g., Indmar Prods.*, 444 F.3d at 777-78.[3]

## II.

HHC is a parent corporation of affiliated companies; its consolidated income tax returns for fiscal years 2000 and 2001 are also at issue in this appeal. In August of 1999, HEI transferred ownership of all of its subsidiaries to HHC in exchange for 100% of HHC's stock. HBW, Inc., a subsidiary of HEI and subsequently HHC, owned 99 of the 100 membership units of Leasing Company LLC ("LCL"), a limited liability company organized under the laws of Wyoming. LCL's original operating agreement was amended and restated on March 28, 2001. Included in the amendments was new section 7.7 (known as a "DRO") that obligated the members of LCL, upon liquidation of their membership interests, to satisfy any negative balances in their capital accounts.

---

[3]HEI argues that the cases relied upon by the Tax Court in support of its constructive dividend determination are distinguishable. However, HEI's argument is unpersuasive. The essence of the constructive dividend inquiry is whether a distribution, to whomever paid, was intended primarily for the benefit of a shareholder as opposed to furthering the business aims of the corporation and was made without an expectation of repayment. *See Hagaman*, 958 F.2d at 690 (citing cases). On this record, it cannot be said that we are left with the definite and firm conviction that the Tax Court erred in finding that HEI did not intend to establish a *bona fide* creditor-debtor relationship but rather to confer on its shareholders an economic benefit by enhancing the value of their ALSL ownership interests.

HHC sought deductions under § 465 of the Internal Revenue Code, claiming that the amendment to the LCL operating agreement rendered it "at risk," as that term is defined under § 465, with respect to LCL's recourse debt. According to HHC, the situation may arise where the effect of the DRO would be to obligate the members of LCL to contribute capital equal in amount to each member's *pro rata* share of LCL's recourse indebtedness. The IRS disallowed those deductions, and the Tax Court ruled in favor of the Commissioner on this issue.

I.R.C. § 465 provides that taxpayers engaged in certain activities–including the leasing activities of LCL–may deduct losses incurred as a result of those activities to the extent they are "at risk" as defined by the statute. § 465(a). A taxpayer is "at risk" for any capital contributions made. *See* § 465(b)(1)(A). In addition, a taxpayer is "at risk" under § 465 with respect to amounts borrowed in order to carry on the activity to the extent he or she is personally liable for the repayment of those amounts. § 465(b)(2). The parties point to *Emershaw v. Commissioner* as establishing the standard for determining whether a taxpayer is personally liable for purposes of § 465. 949 F.2d. 841 (6th Cir. 1991). Under the *Emershaw* standard, a taxpayer is personally liable if, in the worst case, he or she will be the "payor of last resort." *Id.* at 849-51; *see also Pledger v. United States*, 236 F.3d 315, 319 (6th Cir. 2000).

In its opinion the Tax Court did not explicitly reach this issue, instead determining that to the extent the DRO provision created liability, that liability was contingent on an LCL member's liquidation of its interest, and because HHC did not liquidate its interest in LCL during the taxable years at issue, it could not be considered "at risk." The Commissioner acknowledges that the Tax Court did not explicitly engage in the worst-case analysis called for by the payor of last resort test. Thus, the Tax Court's opinion failed to address whether or not economic circumstances beyond the

control of LCL members might force liquidation of their interests, thus causing the DRO to operate in a manner that might cause LCL members to become liable for a portion of LCL's obligations.

Under the circumstances, we deem it prudent to vacate the decision of the Tax Court with respect to the effect of the DRO and the extent to which it placed HHC "at risk" for a portion of LCL's recourse obligations. Furthermore, we remand this case in order to allow the parties to develop the factual record before the Tax Court more fully and determine whether or not the DRO rendered HHC the "payor of last resort" as required by our precedent.

## III.

For the foregoing reasons, we affirm the decision of the Tax Court denying HEI a deduction for sums advanced to ALSL under the Grid Note, vacate the decision of the Tax Court as to the effect of the DRO on HHC's "at risk" amount under I.R.C. § 465, and remand the case to the Tax Court for further proceedings consistent with this opinion.