T.C. Memo. 2008-46


UNITED STATES TAX COURT


HUBERT ENTERPRISES, INCORPORATED, SUCCESSOR BY MERGER TO
HUBERT HOLDING COMPANY, Petitioner <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent[*]


Docket No. 16798-03.                    Filed February 28, 2008.


        L is a limited liability company that purchased
equipment and partially financed its purchases using
recourse debt.  L reports its operations for Federal
income tax purposes on the basis of a taxable year
ending July 31.  On Mar. 28, 2001, L's two members
amended L's operating agreement to add a provision on
deficit capital account restoration.  Under the
provision, stated as effective Jan. 1, 2000, any L
member with a deficit capital account following the
liquidation of its interest in L had to contribute to L
by the end of the taxable year, or if later within 90
days after the date of the liquidation, funds equal to
the amount of the deficit for payment to L's creditors
or for distribution to the members of L with positive

---

        * This opinion supplements <u>Hubert Enters., Inc. & Subs. v.
Commissioner</u>, 125 T.C. 72 (2005), affd. in part, vacated in part
and remanded 230 Fed. Appx. 526 (6th Cir. 2007).

capital accounts.  Pursuant to the provision, H, a member of L with a 99-percent interest therein, took into account its proportionate share of L's recourse debt in computing its at-risk amounts under sec. 465(b)(2)(A), I.R.C., for H's taxable years ended in July 2000 and 2001.

Held:  For Federal income tax purposes, the provision is inapplicable to H's taxable year ended in 2000 because the amendment was made too late under sec. 761(c), I.R.C., and other provisions, to be included in L's operating agreement for that year.

Held, further, H may not take into account L's recourse debt for H's taxable year ended in 2001 because H was not personally liable for the repayment of that debt under sec. 465(b)(2)(A), I.R.C.


William F. Russo and R. Daniel Fales, for petitioner.

Gary R. Shuler, Jr., for respondent.


SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  This case is before the Court on remand from the Court of Appeals for the Sixth Circuit.  We filed our initial report as Hubert Enters., Inc. & Subs. v. Commissioner, 125 T.C. 72 (2005) (Hubert I).  Hubert I was a consolidation of three cases, and the Court of Appeals for the Sixth Circuit affirmed our decisions in two of those cases.  See Hubert Enters., Inc. v. Commissioner, 230 Fed. Appx. 526 (6th Cir. 2007), affg. in part, vacating in part and remanding 125 T.C. 72 (2005).  The Court of Appeals for the Sixth Circuit vacated the remaining decision and remanded the case to this Court to decide, after allowing the parties to develop the record more fully, whether the deficit

capital account restoration obligation (DRO) included in the amended and restated operating agreement of Leasing Co., L.L.C. (LCL), a limited liability company, rendered LCL's members payors of last resort under the law applicable in the Sixth Circuit. Id. at 531. The relevant years for LCL are its taxable years ended July 31, 2000 and 2001, and LCL's members added the DRO to LCL's operating agreement on March 28, 2001, stated as effective January 1, 2000. LCL's members are HBW, Inc. (HBW), a wholly owned subsidiary of Hubert Holding Co. (HHC), and Hubert Commerce Center (HCC). The subject years are HHC's taxable years ended in July 2000 and 2001.[1]

On remand, we ordered the parties to state the proper course of action to be taken in light of the remand. Neither party requested any further trial, stating that the mandate of the Court of Appeals for the Sixth Circuit was best followed through their filing of seriatim briefs. Accordingly, we decide the relevant issue on the basis of the record underlying Hubert I, with the assistance of additional briefing by the parties. We incorporate herein our facts as set forth in Hubert I and repeat those facts only as necessary for a comprehensive analysis of the relevant issue. We hold that the DRO did not render HBW a payor

---

[1] For Federal income tax purposes, HHC and HBW reported their operations for those years on the basis of a 52- to 53-week fiscal year ending on the Friday nearest to each July 31.

of last resort under the applicable law.[2]  Unless otherwise
noted, section references are to the applicable versions of the
Internal Revenue Code.

### FINDINGS OF FACT

LCL was formed as a Wyoming limited liability company on
April 30, 1998, and was treated as a partnership for Federal
income tax purposes.  LCL operated on the basis of a fiscal year
ended July 31, and it filed Forms 1065, U.S. Return of
Partnership Income, to report its operations for Federal income
tax purposes.  During the relevant years, LCL engaged in
equipment leasing activities and purchased equipment subject to a
lease.  LCL partially financed its purchases of that equipment
using promissory notes.  Some portions of the notes were
recourse; the remaining portions were nonrecourse.

LCL's members were HBW and HCC.  HBW owned 99 of LCL's 100
membership units, and HCC owned the remaining unit.  During the
subject years, HBW was a wholly owned subsidiary of HHC and a
member of its affiliated group.  HCC also was connected with that
group.

Relevant Equipment Leasing Activities

In 1998, LCL purchased some equipment from Capital Resources
Group, Inc. (CRG).  In connection with this purchase, LCL signed

---

[2] We decide the relevant issue as to HBW.  As mentioned
above, HHC was the parent of HBW, and HBW was the relevant member
of LCL.

four promissory notes.  Two of the notes were nonrecourse; the other two notes were partially recourse.  Neither LCL member signed any of these notes or otherwise guaranteed repayment of the notes.

In 2000, LCL purchased other equipment from CRG.  In connection with this purchase, LCL signed two promissory notes.  Both notes were partially recourse.  Neither LCL member signed either of these notes or otherwise guaranteed repayment of the notes.

The DRO

Section 4.2 of LCL's initial operating agreement (initial operating agreement) states that "No Member shall be liable as such for the liabilities of the Company".  On March 28, 2001, LCL's two members amended and restated the initial operating agreement in its entirety (revised operating agreement) and stated in the revised operating agreement that it was effective as of January 1, 2000.  The revised operating agreement is construed under Wyoming law, and only the parties that signed the revised operating agreement (and their successors in interest) have any rights or remedies under that agreement.  The revised operating agreement states that the life of LCL is 30 years from the date of the filing of its articles of organization with the

Wyoming secretary of state.[3] The revised operating agreement states that neither LCL member is required to make any additional capital contribution to LCL.

Section 7.7 of the revised operating agreement contains the DRO.[4] That provision states as follows:

> <u>Deficit Capital Account Restoration</u>. If any Partner has a deficit Capital Account following the liquidation of his, her or its interest in the partnership, then he, she or it shall restore the amount of such deficit balance to the Partnership by the end of such taxable year or, if later, within 90 days after the date of such liquidation, for payment to creditors or distribution to Partners with positive capital account balances.

<u>Provision Concerning Potential Third-Party Beneficiaries</u>

The revised operating agreement contains a provision concerning potential third-party beneficiaries. As stated in section 20.9 of that agreement:

> Nothing express or implied in this Agreement is intended or shall be construed to confer upon or to give any person or entity, other than the parties or their successors-in-interest in accordance with the provision of this Agreement, any rights or remedies hereunder or by reason hereof.

---

[3] The initial operating agreement states that the term is 10 years unless dissolved earlier pursuant to the provisions of that agreement.

[4] A partnership (or another type of entity treated as a partnership) typically includes a DRO in its operating agreement so that the allocations of income, gain, loss, deduction, or credit (or item thereof) stated in the agreement have "substantial economic effect" within the meaning of sec. 704(b)(2). See generally sec. 1.704-1(b), Income Tax Regs., and especially par. (2)(ii)(<u>b</u>)(<u>3</u>) thereof.

At-Risk Bases of HBW

For its taxable years ended in July 2000 and 2001, HBW took into account its proportionate share of LCL's recourse debt in computing its at-risk amounts under section 465(b). Respondent determined that HBW was not entitled to increase its at-risk amounts on account of that debt. Accordingly, respondent determined, HBW was not entitled to deduct losses that it claimed with respect to LCL's leasing activities because those losses exceeded the amounts for which HBW was at risk with respect to those activities.

OPINION

Petitioner argues that the DRO rendered HBW a payor of last resort as to LCL's recourse debt for purposes of applying the at-risk rules of section 465(b).[5] Respondent argues that HBW was not a payor of last resort as to LCL's recourse debt because the DRO did not render HBW personally liable as to that debt. We agree with respondent.

First Subject Year

As to the first subject year, the DRO was included in the revised operating agreement which resulted from an amendment made

---

[5] Petitioner makes no argument that HBW also may take into account LCL's nonrecourse debt when applying those rules. We deem that issue to have been waived and do not decide it. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Burbage v. Commissioner, 82 T.C. 546, 547 n.2 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Wolf v. Commissioner, T.C. Memo. 1992-432, affd. 13 F.3d 189 (6th Cir. 1993).

on March 28, 2001.  Although the amendment was written retroactively as effective January 1, 2000, the agreement had no such retroactive effect for Federal income tax purposes.  LCL's partnership return for its taxable year ended July 31, 2000, was required (absent an extension) to be filed by November 15, 2000, see sec. 1.6031(a)-1(e)(2), Income Tax Regs., and for Federal income tax purposes a partnership agreement may include as to a taxable year only those provisions included with the agreement on or before the unextended due date of the partnership return for that year, see sec. 761(c); Fahey v. Commissioner, T.C. Memo. 1979-20; see also Long v. Commissioner, 77 T.C. 1045, 1078 n.17 (1981).  In addition, in the context of section 465, section 465(a)(1) requires that the amount for which a taxpayer is at risk with respect to an activity for a taxable year be determined as of the close of that year.  See also Callahan v. Commissioner, 98 T.C. 276, 281 (1992); Melvin v. Commissioner, 88 T.C. 63, 73 (1987), affd. 894 F.2d 1072 (9th Cir. 1990).  The amendment's purported retroactive effect to the earlier year also does not comport with the annual accounting system of Federal income taxation.  Under that system, the amount of income tax payable for a taxable year is generally determined on the basis of those events happening or circumstances present during that year.  See Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 377 (1983); Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931); Hayutin v.

Commissioner, 508 F.2d 462, 474 (10th Cir. 1974), affg. T.C. Memo. 1972-127; see also Frederick v. Commissioner, 101 T.C. 35, 39-40 (1993); sec. 1.461-1(a)(3), Income Tax Regs. We conclude that the DRO was not a part of LCL's operating agreement for its taxable year ended July 31, 2000, thus rendering the DRO inapplicable to the first subject year. Accord Daine v. Commissioner, 168 F.2d 449, 451-452 (2d Cir. 1948) (and cases cited thereat) (retroactive order of State court not taken into account in the setting of Federal income tax), affg. 9 T.C. 47 (1947). We turn to deciding whether the DRO applies to the second subject year.

Second Subject Year

The parties agree that the recourse notes signed by LCL did not in and of themselves create personal liability for HBW. See also Wyo. Stat. Ann. sec. 17-15-113 (2007) (providing that "the members of a limited liability company * * * are [not] liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company"). The parties dispute whether the DRO made HBW personally liable on those notes for purposes of applying the at-risk rules of section 465. Petitioner argues that LCL's recourse creditor could in a worst case situation obtain a judgment against LCL and cause the DRO to be enforced against HBW so that the recourse creditor could then receive from HBW

payments on the recourse notes. Petitioner asserts that Wyo. Stat. Ann. sec. 17-15-121(a) and (c) allows a member of a limited liability company to promise to contribute additional capital to the company and permits a creditor of the company to enforce that promise in order to receive payment on a debt owed to the creditor by the company.

As discussed in detail below, we disagree with petitioner's argument and assertion as applied to the facts at hand. First, from a factual point of view, HBW did not through the DRO make an unconditional promise to contribute additional capital to LCL. To the contrary, the DRO requires that HBW contribute additional capital to LCL only if: (1) HBW liquidates its interest in LCL and (2) then has a deficit in its capital account. For this purpose, as discussed further below, LCL's recourse creditor has no right to force HBW to liquidate its interest in LCL to cause an additional contribution under the DRO. Hence, HBW's personal liability for repayment of LCL's recourse debt is neither fixed nor definite but is generally contingent on HBW voluntarily causing a liquidation of its interest in LCL. Even then, HBW's contribution of additional capital is required under the DRO only if HBW then has a deficit capital account. Second, even if both conditions are met, the DRO does not impose on HBW an obligation to contribute funds in the amount necessary to satisfy its proportionate share of any unpaid debt owed by LCL; the DRO

simply requires that HBW contribute funds equal to the amount of the deficit in HBW's capital account, which may or may not be the same as the amount of HBW's proportionate share of LCL's recourse debt. Third, even if HBW actually makes an additional contribution to LCL's capital under the DRO, the DRO does not require that any of the additional contribution be paid to one or more of LCL's creditors. The DRO states specifically that LCL may transfer the additional contribution to its members with positive capital accounts.

Congress enacted section 465 to limit the use of artificial losses created by deductions from certain leveraged investment activities. Section 465(a)(1) provides that a taxpayer who is engaged in certain activities may deduct losses occurring from these activities only to the extent that the taxpayer is "at risk" for such activities at the close of a taxable year. Equipment leasing, which is the type of activity involved in this case, comes within the terms of these at-risk activities. See sec. 465(c)(1)(C).

Under section 465(b)(1)(A), a taxpayer is at risk for amounts of money and the adjusted basis of other property contributed by the taxpayer to the designated activity. The basis of property, under section 1012, is generally defined as cost and that cost is increased or decreased, i.e., adjusted, as permitted pursuant to section 1016. Under section 465(b)(2), a

taxpayer also is at risk for amounts borrowed for use in the activity to the extent that the taxpayer is "personally liable for the repayment of such amounts" or to the extent that the taxpayer has pledged property, other than the property used in the activity, as security for such borrowed amounts. A taxpayer is not at risk with respect to amounts protected against loss through nonrecourse financing, guaranties, stop loss agreements, or other similar arrangements. See sec. 465(b)(4). The mere fact that a debt of a partnership (or similar entity) is payable in a later year by the partner does not necessarily mean that the partner must exclude the amount of that debt from the computation of the partner's at-risk amount with respect to the partnership. See Melvin v. Commissioner, 88 T.C. at 73-74.

This case is appealable to the Court of Appeals for the Sixth Circuit. That court has analyzed the at-risk provisions of section 465 in the setting of leases in three primary opinions; namely, Pledger v. United States, 236 F.3d 315 (6th Cir. 2000), Martuccio v. Commissioner, 30 F.3d 743, 750-751 (6th Cir. 1994), revg. T.C. Memo. 1992-311, and Emershaw v. Commissioner, 949 F.2d 841 (6th Cir. 1991), affg. T.C. Memo. 1990-246. In each of these cases, the court applied the "payor of last resort" test that it first adopted in Emershaw. That test essentially asks in the setting of section 465(b) whether the taxpayer has a fixed and definite obligation to use personal funds to pay a debt in a

worst case scenario. See also <u>Pritchett v. Commissioner</u>, 827 F.2d 644, 647 (9th Cir. 1987) (a taxpayer is not at risk if the taxpayer's obligation to repay borrowed funds is contingent), revg. on other grounds 85 T.C. 580 (1985). Under this test, if a taxpayer is a payor of last resort, then the taxpayer is at risk for the purpose of section 465(b).

In determining whether the taxpayers in <u>Emershaw v. Commissioner</u>, <u>supra</u>, were payors of last resort, the Court of Appeals for the Sixth Circuit initially referenced a Tax Court Opinion stating that whether a taxpayer is at risk for purposes of section 465(b) "'must be resolved on the basis of who realistically will be the payor of last resort if the transaction goes sour and the secured property associated with the transaction is not adequate to pay off the debt.'" <u>Id.</u> at 845 (quoting <u>Levy v. Commissioner</u>, 91 T.C. 838, 869 (1988)). The Court of Appeals gave detailed consideration to the Commissioner's argument that the taxpayers' investment could not be at risk because there was not a realistic possibility that the taxpayers would ever be called upon to make payments on the debt. <u>Id.</u> The court dismissed that argument as unpersuasive and found that the taxpayers were at risk because they could ultimately be required to make payment. <u>Id.</u> at 850. The court concluded that the taxpayers were payors of last resort because they might have to pay the debt.

Here, in a worst case scenario, HBW is not a payor of last resort as to LCL's recourse debt. In such a scenario, LCL defaults on the debt without any assets to repay any of the debt. LCL's default, however, does not mean that the recourse creditor can simply turn to HBW to collect any part of the debt. HBW's obligation under the DRO requires in part that HBW liquidate its interest in LCL, and LCL's default on its payment of its recourse debt does not trigger a liquidation of HBW's interest in LCL (or of LCL itself).[6] Nor in a worst case scenario could LCL's recourse creditor recover directly from HBW or compel a dissolution of LCL so as to force a liquidation of HBW's interest in LCL. The revised operating agreement states that LCL shall be liquidated upon its "dissolution" and that dissolution occurs "only as provided by the Wyoming LLC Act." Under that act, the dissolution of a limited liability company occurs only upon the happening of one of three events, none of which is the company's default on the payment of a debt. See Wyo. Stat. Ann. sec.

---

[6] Petitioner apparently assumes that in a worst case scenario HBW will liquidate its interest in LCL and then have a deficit capital account thus triggering the DRO. We disagree with the assumption. As stated herein, HBW's liquidation of its interest in LCL is left up to HBW, and we do not assume that HBW on its own would liquidate its interest in LCL if it was detrimental for HBW to do so. In other words, as discussed below, LCL could not be made to liquidate by a creditor in any circumstance, not even by a creditor that forced LCL into receivership or bankruptcy.

17-15-123(a).[7]  Thus, LCL's default on its obligation to repay

the recourse notes would not entitle LCL's recourse creditor to

compel the dissolution of LCL.[8]  The DRO also would not apply to

HBW if LCL defaulted on its debt and HBW had a positive capital

account following a liquidation of HBW's interest in LCL.  Given

---

[7] Wyo. Stat. Ann. sec. 17-15-123(a), provides:

A limited liability company organized under this
chapter shall be dissolved upon the occurrence of any
of the following events:

      (i)  When the period fixed for the duration of the
limited liability company shall expire;

      (ii)  By the unanimous written agreement of all
members; or

      (iii)  Upon the death, retirement, resignation,
expulsion, bankruptcy, dissolution of a member or
occurrence of any other event which terminates the
continued membership of a member in the limited
liability company, unless the business of the limited
liability company is continued by the consent of all
the remaining members under a right to do so stated in
the articles of organization of the limited liability
company.

Upon the happening of the last of the three events just listed,
the revised operating agreement allows the business of LCL to be
continued by the consent of the remaining member.

[8] Nor are we aware of any provision in Wyoming law that
would allow LCL's recourse creditor to cause LCL to liquidate to
make the DRO provision effective.  See Wyo. Stat. Ann.
secs. 17-15-101 through 17-15-147.  We are not unmindful of Wyo.
Stat. Ann. sec. 17-15-145.  Under that section, a creditor of a
limited liability company may be able to force liquidation of the
limited liability company in certain cases if a member of that
company defaulted on a personal debt owed to the creditor.
There, however, it is not a debt of the limited liability company
that is involved; it is the debt of the member.

that the DRO requires additional capital contributions only when a member "has a deficit Capital Account following the liquidation of * * * its interest" in LCL and that no creditor of LCL could compel a liquidation of HBW's interest in LCL, we conclude that HBW is not a payor of last resort because HBW is not "personally liable for the repayment" of any of LCL's recourse debt within the meaning of section 465(b)(2)(A). In other words, we conclude that HBW is not personally liable for the repayment of any of LCL's recourse debt because HBW's obligation to contribute additional funds to LCL is not unavoidable in that HBW can avoid contributing additional capital under the DRO simply by not liquidating. See Callahan v. Commissioner, 98 T.C. at 283.

Petitioner relies erroneously on Wyo. Stat. Ann. sec. 17-15-121(a) and (c), to support a contrary conclusion.[9] As

_____

[9] Wyo. Stat. Ann. sec. 17-15-121(a) and (c), provides:

Sec. 17-15-121. Liability of member to company.

(a) A member is liable to the limited liability company:

(i) For the difference between his or its contributions to capital as actually made and that stated in the articles of organization, operating agreement, subscription for contribution or other document executed by the member as having been made by the member; and

(ii) For any unpaid contribution to capital which he or it agreed in the articles of organization, operating agreement or other document executed by the member to make in the future at the time and on the

(continued...)

petitioner sees it, that section allows a member of a limited liability company to promise to contribute additional capital to the company and permits a creditor of the company to enforce that promise in order to receive payment on a debt owed by the company to the creditor. We disagree with petitioner's application of this section to the facts at hand. As stated above, the operation of the DRO hinges on a liquidation of a member's interest in LCL, and a creditor of LCL has no right to compel such a liquidation. Further, the revised operating agreement does not require LCL to pay the restored deficit to creditors; it allows this amount to be distributed to members with positive capital account balances. Further, the revised operating agreement does not confer any rights on a creditor of LCL. The agreement states specifically that nothing express or implied therein "shall be construed to give to any person or entity, other than the parties or their successors-in-interest * * *, any

---

[9](...continued)
conditions stated in the articles of organization, operating agreement or other document evidencing such agreement.

    \*     \*     \*     \*     \*     \*     \*

(c) The liabilities of a member as set out in this section can be waived or compromised only by the consent of all members; but a waiver or compromise shall not affect the right of a creditor of the limited liability company who extended credit or whose claim arose after the filing and before a cancellation or amendment of the articles of organization, to enforce the liabilities.

rights or remedies hereunder or by reason hereof."  We also note the illogic of petitioner's argument that the DRO in and of itself makes HBW at risk for the repayment of LCL's recourse debt.  As we have stated, a DRO is routinely inserted into a partnership agreement to meet the substantial economic effect requirements of section 704(b).  If a member of a limited liability company is automatically "at risk" for repayment of the company's recourse debt simply by inserting a DRO in the operating agreement in order to meet the requirements of section 704(b), then the at-risk rules of section 465 have little purpose in that seemingly every member of a limited liability company is at risk for the repayment of the company's recourse debt.

The limited amount of any capital contribution under the DRO further supports our conclusion that HBW was not a payor of last resort as to LCL's recourse debt.  Under the DRO, HBW's obligation is limited to restoring the amount of any deficit in its capital account.  However, the amount of that deficit, if in fact one occurs, is not necessarily the same amount as HBW's proportionate share of LCL's recourse debt.  Moreover, as just noted, the revised operating agreement does not require LCL to pay any or all of the restored deficit to creditors; it allows LCL to distribute any restored funds to members with positive capital account balances.

We hold that the DRO did not render HBW a payor of last resort under the applicable law.[10]  Instead, the person who bears the risk of loss on a default on LCL's recourse obligations is LCL's recourse creditor itself.  Such a fact is not surprising, however, in that it is that creditor that chose to deal with LCL in its status as a limited liability company and through the terms of the promissory notes agreed to seek repayment solely from the assets of LCL rather than also from the assets of one or more of LCL's members.  We have considered all arguments by petitioner for a holding contrary to that which we reach herein and have concluded that those arguments not mentioned herein are irrelevant or without merit.  Accordingly,

<u>Decision will be entered</u>

<u>as previously entered on</u>

<u>September 28, 2005</u>.

---

[10] Even if we had concluded that the DRO did render HBW a payor of last resort, we would have held against petitioner in that it has failed to prove the amount of any additional loss that it is entitled to deduct in this case.