T.C. Memo. 2010-184

UNITED STATES TAX COURT

MYRTIS STEWART, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10376-08.                    Filed August 16, 2010.

Myrtis Stewart, pro se.

Shawna A. Early and Robert A. Baxer, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  For 2004 and 2005 respondent determined

deficiencies in petitioner's Federal income taxes and section

6662(a)[1] accuracy-related penalties as follows:

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the years in
issue, and all Rule references are to the Tax Court Rules of
(continued...)

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 2004 | $9,240 | $1,848.00 |
| 2005 | 12,447 | 2,489.40 |

The issues for decision are whether petitioner is: (1) Entitled to deductions for losses of $25,000 for rental expenses claimed on Schedule E, Supplemental Income and Loss, for each year; (2) entitled to deductions for theft losses of $12,093 and $23,525.75 claimed on Schedules A, Itemized Deductions, for 2004 and 2005, respectively; (3) entitled to carryover losses of $1,521.13 and $1,521 for 2004 and 2005, respectively; and (4) liable for the section 6662(a) accuracy-related penalties.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in New York when the petition was filed.

Petitioner has worked for the Internal Revenue Service (IRS) as an international examiner, i.e., a revenue agent, for over 21 years, including 2004 and 2005. Through her work, which includes examining tax returns, she has acquired a general knowledge of the Federal income tax laws and the substantiation requirements of the Code and the regulations thereunder. She also made

---

[1](...continued)
Practice and Procedure.

several business investments before or during 2004 and 2005 (discussed infra).

I.  116 Highland Lake (Highland Lake property), Highland, N.Y. and 112 Hillside (Hillside property), Barryville, N.Y.

A.  Background

Petitioner and Mary Anastasio (Ms. Anastasio) invested in several properties together.  They acquired the Hillside property sometime before the years in issue.  The Hillside property covers 4 to 5 acres of land and has a New England style double Cape Cod house with an adjoining garage.  Petitioner used the Hillside property as her headquarters for the management of her real estate.

Petitioner and Ms. Anastasio purchased the Highland Lake property in or around 1995 for about $200,000 with a $25,000 downpayment.  Petitioner paid $12,500 of the downpayment.  According to petitioner, Ms. Anastasio acquired the Highland Lake property in her name because petitioner,[2] an African American, was not "able to purchase this property * * * in this town."  The Highland Lake property is a 22-room Victorian style house with a wraparound porch, which petitioner and Ms. Anastasio renovated.  They purchased it because they planned to operate a bed and breakfast out of the house.  But they sometimes rented it out.

_____

[2]  Petitioner has purchased several properties in her name or in a coinvestor's name.

A first mortgage on the Highland Lake property of about $100,000 was held by First National Bank of Jeffersonville (FNB), and a second mortgage of about $100,000 was held by the seller of the Highland Lake property. Petitioner and Ms. Anastasio each made mortgage payments of $788.62[3] per month until Ms. Anastasio became ill in 2000 and could not work. Thereafter, petitioner paid both mortgages.

Petitioner used both properties to store her collectibles.

B. <u>Collectibles Kept at the Highland Lake and Hillside Properties</u>

   1. <u>Stamps, Coins, and Currency Sheets</u>

Petitioner has been collecting stamps and coins for over 50 years. As a young child she started collecting stamps and Lincoln wheat pennies, Indian head pennies, and buffalo nickels. In her teen years she started buying uncirculated and proof coins from the Mint. In her twenties she started buying coins and proof coins at coin shows and from coin shops. She usually purchased stamps at trade shows or stamp shops. She recorded her purchases in books (inventory records).

Petitioner accumulated a large coin collection: she had rolls of coins, unopened bags of Mint nickels and dimes, and uncut currency sheets of various denominations, including a

---

[3] The mortgage payments amounted to $1,577.23 per month ($777.67 and $799.56 for the first and second mortgage, respectively); $788.62 represents their equal share of both payments.

Hawaiian dollar bill. She kept the less valuable coins at her Manhattan apartment and kept the more valuable coins at her Highland Lake and Hillside properties. She stored the coins in closets in plastic containers that were on rollers like toolboxes at her Highland Lake property. At the Hillside property, petitioner stored her coins in a glass curio cabinet and in a glass display cabinet with some stamps on a wall in her library.

### 2. Books

Petitioner also collected books for her libraries at the Highland Lake and Hillside properties. She purchased a set of 20 books on financial rating services with yearly updates for her professional library at the Highland Lake property and entire collections of books from auctions for her library at the Hillside property.

### 3. Artwork

Petitioner also collected art. Specifically, she owned a 2-by 3-foot painting that depicts Custer's Last Stand at the Battle of the Little Bighorn in 1876 and was signed by the artist. She kept this painting at the Hillside property.

### C. Falling Out and Thefts

Petitioner and Ms. Anastasio's business relationship fragmented and eventually, in or around 2004, petitioner stopped doing business with Ms. Anastasio.

Ms. Anastasio filed for bankruptcy and allowed the Highland Lake property to go into foreclosure. Petitioner filed a notice of pendency[4] for the Highland Lake property in Ms. Anastasio's bankruptcy proceeding because Ms. Anastasio allegedly did not comply with the terms of a settlement agreement and because petitioner wanted to protect her interest in the Highland Lake property. Ms. Anastasio sold the Highland Lake property in 2001 or 2002 without petitioner's knowledge. Petitioner did not receive any proceeds from the sale.

Petitioner's collectibles allegedly were stolen from the Hillside and Highland Park properties at some point. She discovered the thefts from the Hillside and Highland Park properties in 2004 and 2005, respectively, when she went to the properties and discovered that the items were gone. Neither property had been broken into or forcibly entered. The items were purportedly stolen by an acquaintance of Ms. Anastasio to whom Ms. Anastasio had given the keys to both properties. Petitioner filed police reports in New Jersey for the thefts.[5]

---

[4] A notice of pendency informs others about a lawsuit affecting the title to or an interest in property. See, e.g., Debral Realty, Inc. v. DiChiara, 420 N.E.2d 343 (Mass. 1981).

[5] Petitioner testified that she filed police reports in New Jersey because the New York police would not allow her to file police reports since the alleged perpetrators resided in New Jersey.

D. Deductions Claimed for the Highland Lake and Hillside properties

    1. Legal Expenses and Bad Debt Deduction

Petitioner claimed on her 2004 Schedule E a deduction for legal expenses of $768 for the Highland Lake property. She provided a copy of a settlement agreement and a complaint for another lawsuit that she filed against Ms. Anastasio as substantiation of her legal expenses. The settlement agreement provides in pertinent part that Ms. Anastasio will allow petitioner to remove "clothing, books, shoes, furniture, toys, and other collectibles" from the Highland Lake property.

Petitioner concluded that she had suffered a loss for a bad debt in 2004 and 2005 after she had exhausted all legal avenues against Ms. Anastasio. She claimed on her 2004 and 2005 Schedules E deductions for bad debts of $18,926.76 and $18,328.62, respectively, for the Highland Lake property. She reconstructed her mortgage payments from 1996 to 2000 and for each of the years 2004 and 2005 deducted as a bad debt 2 years of mortgage payments as her "basis" in the Highland Lake property.

Petitioner provided an account statement from FNB for February 2 to May 1, 1996, to substantiate her basis. The account statement shows that three mortgage payments of $777.67 were drawn from petitioner and Ms. Anastasio's joint account.

### 2. Theft Loss Deduction

Petitioner was not compensated by insurance or otherwise for the thefts of her collectibles, and she deducted the purchase prices of the items as the amounts of her theft losses.

Petitioner claimed on her 2004 Schedule A a deduction for theft losses of $12,093 for the Hillside property.  Her deduction for the theft loss relates to coins, paintings, antiques, furniture, her library, and appliances.[6]

Petitioner claimed on her 2005 Schedule A a deduction for theft losses of $18,525.75 for the Highland Lake property.  Her deduction for the theft loss relates to coins, paintings, antiques, furniture, her professional library, and appliances.[7]

## II. 229 East 29th Street (East 29th Street property), New York, N.Y.

### A. Background

Petitioner, Ms. Anastasio, and another coinvestor purchased the East 29th Street property in 2003.  They paid $3,000 and assumed the $21,000 or $27,000[8] debt to which the East 29th Street property was subject.  Ms. Anastasio and the other coinvestor purchased the East 29th Street property in their names

---

[6]  Petitioner's testimony about the items stolen in each theft loss was less than clear.

[7]  Petitioner did not describe the antiques, furniture, appliances, and paintings.

[8]  Petitioner could not recall the exact amount of the debt.

because, according to petitioner, she was not allowed to purchase that property in her name.  The East 29th Street property is a co-op apartment that was occupied by tenants.  Petitioner, Ms. Anastasio, and the other coinvestor invested in the East 29th Street property to obtain the benefits of appreciation and tax deductions.  Petitioner reported rental income received of $2,304 for 2004 and 2005.

B.  Deductions Claimed for the East 29th Street Property

Petitioner claimed on each of her 2004 and 2005 Schedules E deductions for management fees of $2,652.06 and property taxes of $2,114.31 for the East 29th Street property.  The management fees include about $50 per month for maintenance.  The property taxes include some special assessments that were billed at the end of each year.  She paid $309.01 per month for the management fees, maintenance fees, and property taxes.[9]  She  made the payments by checks drawn from her account.

Petitioner provided carbon copies of checks of $309.01 for November 2004 and May 2005 payable to "229 E. 29th St. Owners Corp." to substantiate some of her payments.  She also provided copies of bank statements for the period November 2003 to

---

[9]  Ms. Anastasio and/or the other coinvestor gave petitioner their portions of the expenses, and petitioner paid the payments in whole.  The $309.01 per month did not include amounts paid for additional amounts owed at the end of each year, including amounts paid for special assessments.

November 2004 that show checks of $309.01 were drawn from her account.

III. Tighe Avenue (Tighe Ave. property) and Brookside Lots (Brookside property), Newburgh (Newburgh) and Harriman, N.Y.

A. Background

Petitioner purchased the Tighe Ave. and Brookside properties for investment purposes with the intent to develop them. She purchased the Tighe Ave. property in 2003 for $500 at an auction. The Tighe Ave. property is undeveloped land. She rented the Tighe Ave. property to a person who resided at the Tighe Ave. property in an "RV" trailer or mobile home. The record is unclear as to how and when petitioner acquired the Brookside property. The Brookside property consists of two undeveloped, "buildable", and nonadjoining lots in a development. Petitioner reported rental income received of $1,000 and $1,015 for 2004 and 2005, respectively.

B. Deductions Claimed for the Tighe Ave. and Brookside Properties

Petitioner claimed the following deductions for her Tighe Ave. and Brookside properties:

| Year | Auto./ Travel | Auto. Ins. | Cleaning Maint. | Supplies | Mail | Rent |
|------|------|------|------|------|------|------|
| 2004 | $1,500.00 | $816.00 | -0- | -0- | -0- | $3,048 |
| 2005 | 1,526.01 | [1]916.23 | $489.62 | $525.36 | $120.02 | 3,168 |

[1] Petitioner explained that her $916.23 deduction for automobile insurance was erroneously reported as an other interest expense on Schedule E.

### 1. Automobile and Travel Expenses

Petitioner kept a car in Newburgh to travel to, from, or between her Tighe Ave. and Brookside properties. Her deductions for automobile insurance, automobile expenses, and travel expenses are based on her actual costs, not mileage. Her actual costs include amounts she paid for automobile insurance, travel to, from, and between her properties with her car; bus fare from her New York apartment to Newburgh, and taxi fare for travel between the Tighe Ave. or Brookside properties and the taxi stand at a Newburgh bus stop. She did not keep a mileage log for the use of her car, and other than her testimony she did not provide any written evidence to substantiate her expenditures.

### 2. Rent Expenses

Petitioner deducted payments of $254 per month to Uncle Bob's Storage as rent, of which she paid $52 per month for the storage of her car and $202 per month for the storage of office furniture, filing cabinets, and files.[10] She moved the office furniture, filing cabinets, and files from the Hillside property to the Newburgh area.

Petitioner provided copies of account statements for the period November 2003 to November 2004 to substantiate her rent

---

[10] Petitioner's rent expense increased by $120 in 2005. It is unclear from the record how much, if any, of the $120 is attributable to the storage of her car.

payments.  The account statements show that checks of $254 per month were drawn from her account in 2004.

### 3. Cleaning and Maintenance Expenses

Petitioner paid $489.62 in cash to a company to cut back and clear the Tighe Ave. property because of downed power lines caused by a storm.

### 4. Supplies and Mail Expenses

Petitioner deducted supplies expenses of $525.36 and mail expenses of $120.02 for 2005.  The supplies expenses were paid in cash.

## IV. Other Real Property

### A. Background

Petitioner and a coinvestor also invested in other real property that they later sold.  When the property was purchased, it had a factory located on it that contained gold-spinning machines from the 1700s to the 1800s.  The gold-spinning machines made gold threads for clothing from spools of gold.  Petitioner and the coinvestor agreed that petitioner could remove half of the gold-spinning machines before the sale.  The coinvestor, however, locked the property, and petitioner could not remove her half of the gold-spinning machines.  Petitioner filed a lawsuit against the coinvestor, and while the lawsuit was pending, the gold-spinning machines disappeared from the property.

B.  Deductions Claimed for the Other Real Property

Petitioner claimed on her 2005 Schedule A a theft loss deduction of $5,000 for the theft of her gold-spinning machines. She testified that her gold-spinning machines were worth a lot of money and that her basis in them was $5,000. She explained that she deducted only $5,000 because she was being conservative, and the fair market value of her gold-spinning machines was uncertain. According to petitioner, the purchase price of the gold-spinning machines was included in the purchase price of the real property, but it might have been separately listed. She filed a police report in New Jersey for the theft, but she was not compensated by insurance or otherwise for the theft.

V.  Carryover Losses

Petitioner reported on Schedules E carryover losses of $1,521.13[11] and $1,521.23[12] for 2004 and 2005, respectively, that would carryover to 2005 and 2006. Respondent disallowed the carryover losses in the notice of deficiency because petitioner had not provided any information to substantiate her expenses.

OPINION

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any

---

[11]  $26,521.13 (claimed Schedule E losses) - $25,000 (sec. 469(i) limitation for individuals).

[12]  $26,521.23 (claimed Schedule E losses) - $25,000 (sec. 469(i) limitation for individuals).

deductions claimed.[13]  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435 (1934).  In addition, taxpayers bear the burden of substantiating the amount and purpose of the item claimed as a deduction.  <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Taxpayers are also required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

When taxpayers establish that they have incurred deductible expenses but are unable to substantiate the exact amounts, we can estimate the deductible amounts, but only if the taxpayers present sufficient evidence to establish a rational basis for making the estimates.  See <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).  In estimating the amount allowable, we bear heavily upon the taxpayer whose inexactitude is of his or her own making.  See <u>Cohan v. Commissioner</u>, <u>supra</u> at 544.  We may not use the <u>Cohan</u> doctrine, however, to estimate expenses covered by section 274(d).  See <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec.

---

[13]  Petitioner does not claim or show that sec. 7491(a) applies.  Accordingly, she bears the burden of proof.  See Rule 142(a).

1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Generally, we find petitioner's testimony and that of her witness, Nelson Abrahante[14] (Mr. Abrahante), honest and credible. They testified credibly as to the investment purpose of many of the deductions claimed on petitioner's returns. For some of those deductions, petitioner recalled the amounts of her expenses. Where petitioner's testimony provided a sufficient basis for the Court to estimate the amounts of her expenditures, we have done so, taking account of her inexactitude where appropriate. Where the original documents were lost, but where petitioner presented credible reconstructions of her expenses, we have allowed the claimed amounts.[15]

---

[14] Mr. Abrahante is a coinvestor and a former coworker of petitioner.

[15] It is well established that the Court may permit a taxpayer to substantiate deductions through secondary evidence where the underlying documents have been unintentionally lost or destroyed. Boyd v. Commissioner, 122 T.C. 305, 320-321 (2004); Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); Furnish v. Commissioner, T.C. Memo. 2001-286; Joseph v. Commissioner, T.C. Memo. 1997-447; Watson v. Commissioner, T.C. Memo. 1988-29. Moreover, even though Congress imposed heightened substantiation requirements for certain deductions by enacting sec. 274, the regulations thereunder allow a taxpayer to substantiate a deduction by reasonable reconstruction of his or her expenditures when records are lost through no fault of the taxpayer. Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985).

Petitioner testified that Ms. Anastasio took some of her records and that other records were submitted to other courts in
(continued...)

I.  Section 165 and 166 Theft Loss and Bad Debt Deductions

Section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated by insurance or otherwise.  Section 165(c) limits the loss deduction for individuals to losses incurred in a trade or business, losses incurred in a transaction entered into for profit, and certain other losses including those arising from a theft.  Petitioner has the burden of proving that she sustained a loss during the taxable year.

Section 166(a) generally provides that a taxpayer may deduct a debt that become worthless during the taxable year.  A bona fide debt is a debt that arises from a debtor-creditor relationship reflecting an enforceable and unconditional obligation to repay a fixed sum of money.  Sec. 1.166-1(c), Income Tax Regs.  The existence of a bona fide debt is a factual inquiry, and the taxpayer bears the burden of proving that a bona fide debt existed.  Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973).

---

[15](...continued)
her lawsuits against Ms. Anastasio.

A.  Highland Lake Property

As stated supra, petitioner claimed on her 2004 and 2005 Schedules E deductions for bad debts of $18,926.76 and $18,328.62, respectively, for the Highland Lake property.

Respondent asserts that to the extent petitioner has realized a gain or loss on the Highland Lake property, the gain or loss is capital and was incurred upon the disposition of the property in 2001 or 2002, not during either of the years in issue.  Therefore, according to respondent, petitioner is not entitled to her deductions for bad debts.

Petitioner's testimony on this issue was less than clear. She testified that she had initiated lawsuits against Ms. Anastasio, which she later withdrew, and that ownership of the Highland Lake property was being negotiated as part of a settlement.  She also testified, however, that she was occupying the Hillside property and had exchanged her interest in the Highland Lake property for Ms. Anastasio's interest in the Hillside property.  But, according to petitioner, Ms. Anastasio breached their settlement agreement; and she initiated another lawsuit against Ms. Anastasio, which she also withdrew.  She testified further that Ms. Anastasio sold the Highland Lake property without her knowledge in either 2001 or 2002, and she did not receive any of the proceeds.  She explained that she deducted 2 years of mortgage payments as her basis in the

Highland Lake property as a bad debt in 2004 and 2005 after she exhausted her legal remedies and concluded that she had sustained a loss.

Petitioner has not established that a debt owed to her by Ms. Anastasio became worthless during either year in issue or that she otherwise sustained a loss during either year with respect to the Highland Lake property. Petitioner's testimony on this issue and her records are confused, uncertain, and ambiguous. She has not substantiated a basis in the Highland Lake property or in a purported debt owed to her by Ms. Anastasio. See secs. 165(b), 166(b); Whitaker v. Commissioner, T.C. Memo. 1988-418. Consequently, respondent's disallowance of the bad debt deductions claimed in respect of the Highland Lake property is sustained.

B. Antiques, Artwork, Coins and Currency Sheets, Libraries, Gold-Spinning Machines, Furniture, and Appliances

As stated supra, petitioner claimed deductions for theft losses of $12,093 and $23,525.75[16] for 2004 and 2005, respectively. She deducted her bases and not the fair market values of her artwork, coins and currency sheets, libraries, gold-spinning machines, furniture, and appliances as the amount of her theft losses.

_____

[16] As stated supra, $18,525.75 is attributable to the theft of her coins, paintings, antiques, furniture, her professional library, and appliances, while $5,000 is attributable to the theft of her gold-spinning machines.

Petitioner has not substantiated the items' fair market values immediately before the alleged theft. See secs. 1.165-7(b)(1), 1.165-8(c), Income Tax Regs. (in the case of property held for personal use the amount of the theft loss is the lesser of the property's fair market value immediately before the theft or its adjusted basis). She also has not substantiated the items' bases. See Hubert Enters., Inc. v. Commissioner, T.C. Memo. 2008-46 (the basis of property, under section 1012, is generally defined as cost and that cost is adjusted pursuant to section 1016); see also Kikalos v. Commissioner, T.C. Memo. 1998-92 (it is settled that the deductible amount of a theft loss may not exceed basis), revd. on other grounds 190 F.3d 791 (7th Cir. 1999). Neither the items' fair market values nor their bases can be determined from the record with any degree of certainty. Therefore, we cannot apply the Cohan rule to determine a reasonable allowance for the theft losses. Consequently, petitioner is not entitled to her claimed theft losses, and respondent's determinations in that respect are sustained.

## II.  Section 212 Expenses

Section 212 allows an individual to deduct all of the ordinary and necessary expenses paid or incurred:  (1) For the production of income; (2) for management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of a tax.

A.  Legal Expenses

We apply the origin of the claim test to determine whether a taxpayer's legal expenses are personal, for the production of income, or capital.  The ascertainment of a claim's origin and character is a factual determination that must be made on the basis of the facts and circumstances of the litigation.  United States v. Gilmore, 372 U.S. 39, 47-49 (1963).  The most important factor to consider is the circumstances out of which the litigation arose.  Boagni v. Commissioner, 59 T.C. 708 (1973).

Petitioner testified that she initiated the lawsuit against Ms. Anastasio because Ms. Anastasio breached a settlement agreement allowing petitioner to remove "clothing, books, shoes, furniture, toys, and other collectibles" from the Highland Lake property.

Petitioner has not established that her claim against Ms. Anastasio, out of which her legal expenses arose, has its origin in a profit-seeking activity as distinct from a personal one. Petitioner, therefore, is not entitled to her claimed deductions for legal expenses, and respondent's determination, in that respect, is sustained.

B.  Management Fees and Property Taxes

Petitioner credibly testified about the amounts of and the purposes for her deductions for management fees and property taxes for 2004 and 2005 for the 229 East 29th Street property. She also provided additional substantiation for some of her 2004 payments with copies of her account statements and carbon copies of checks. Petitioner is entitled to her claimed deductions for management fees of $2,652.06 and property taxes of $2,114.31 for 2004 and 2005.

C.  Cleaning and Maintenance Expenses

Petitioner credibly testified that she paid $489.62 in 2005 to a company to cut back and clear the Tighe Ave. property because of downed power lines caused by a storm. Petitioner is entitled to her claimed deduction for cleaning and maintenance expenses of $489.62 for 2005.

D.  Supplies and Mail Expenses

Petitioner credibly testified that she paid $525.36 for supplies expenses and $120.02 for mail expenses in 2005 for the Tighe Ave and Brookside properties. Petitioner is entitled to her claimed deductions for supplies and mail expenses.

E.  Rent Expenses

Petitioner credibly testified that she paid about $202 per month in 2004 and 2005 for the cost of storing office furniture, filing cabinets, and files (we discuss the storage of her car

infra).  She also provided additional substantiation for some of
her 2004 payments with copies of her account statements.
Petitioner is entitled to deductions of $202 per month for rent
expenses for 2004 and 2005.[17]

III.  Section 212 Expenses Subject to Section 274

In addition to satisfying the criteria for deductibility
under section 212, certain expenses must also satisfy the strict
substantiation requirements of section 274(d).  Section 274(d)
and section 1.274-5T(a), (b)(2), and (6), Temporary Income Tax
Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985), provide that no
deduction or credit shall be allowed for travel or automobile
expenses unless the taxpayer substantiates his or her expenses
with adequate records or other corroborating evidence.

A.  Travel Expenses

For travel away from home expenses, section 274(d) and the
regulations thereunder require the taxpayer to substantiate:
(1) The amount of each expenditure; (2) the time of the travel;
(3) the place of the travel; and (4) the business purpose of the
travel.  Sec. 1.274-5T (b)(2), Temporary Income Tax Regs., supra.

As stated supra, petitioner's travel expenses include her
actual costs of travel by taxi between her properties and a taxi
stand and travel by bus to Newburgh.  It is unclear from the
record whether petitioner's travel to Newburgh was travel away

_____

[17]  See supra note 10.

from home--that is, overnight trips in which the exigencies of her investment activity required her to sleep or rest before returning home. See United States v. Correll, 389 U.S. 299 (1967); Lackey v. Commissioner, T.C. Memo. 1977-213; see also I.T. 3395, 1940-2 C.B. 64. To the extent, however, that petitioner's travel was travel away from home, she has not complied with the substantiation requirements of section 274(d). Petitioner is not entitled to deduct her travel expenses under section 212, and respondent's determination, in that respect, is sustained. See Lackey v. Commissioner, supra.

B. Automobile Expenses

For automobile expenses, section 274(d) and the regulations thereunder require the taxpayer to substantiate: (1) The amount of each expenditure or use; (2) the time of the expenditure or use; and (3) the business or investment purpose of the expense or use. See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., supra.

As stated supra, petitioner's automobile expenses include her actual costs for automobile insurance, travel with her car to, from, or between her properties, and $52 per month for the storage cost of her car.

Other than the $52 per month petitioner paid for the storage of her car, she did not substantiate the amounts of her expenditures. She also did not substantiate the amounts or the

times of the automobile's use.  Consequently, petitioner is not entitled to her deductions for automobile expenses or the deductions claimed for storage costs attributable to her car. The Cohan rule is not applicable, see Sanford v. Commissioner, 50 T.C. at 827, and respondent's determinations, in that respect, are sustained.

## IV.  Carryover Losses

As stated supra, petitioner reported on Schedules E losses of $1,521.13 and $1,521.23 for 2004 and 2005, respectively, that would carry over to 2005 and 2006.

The section 469 passive activity loss rules generally disallow the current deduction of losses and credits from activities in which the taxpayer does not materially participate. Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2).  Section 469(i)(1), however, permits a passive activity loss up to $25,000 attributable to a rental real estate activity in which an individual actively participates (subject to certain phaseouts not applicable here).  Amounts disallowed may be carried forward to subsequent years.  Sec. 469(b); sec. 1.469-1(f)(4), Income Tax Regs.

Petitioner reported on Schedules E rental income totaling $3,304 and $3,319 for 2004 and 2005, respectively.  We have

allowed petitioner Schedule E deductions of $7,190.37[18] and

$8,325.37[19] for 2004 and 2005, respectively, which result in

losses of only $3,886.37[20] and $5,006.37[21] for 2004 and 2005,

respectively.  Petitioner, therefore, does not have any carryover

loss for either year.

## V.  Section 6662(a) Accuracy-Related Penalties

Section 7491(c) provides that the Commissioner will bear the

burden of production with respect to the liability of any

individual for additions to tax and penalties.  The

Commissioner's burden of production under section 7491(c) is to

produce evidence that it is appropriate to impose the relevant

penalty, addition to tax, or additional amount.  Higbee v.

Commissioner, 116 T.C. 438, 446 (2001); see also Swain v.

Commissioner, 118 T.C. 358, 363 (2002).  Once the Commissioner

satisfies this burden of production, the taxpayer must persuade

the Court that the Commissioner's determination is in error by

---

[18]  $2,652.06 (management fees) + $2,114.31 (property tax) + $2,424 (rent expense).

[19]  $2,652.06 (management fees) + $489.62 (cleaning and maintenance expense) + $525.36 (supplies expense) + $120.02 (mail expense) + $2,114.31 (property tax) + $2,424 (rent expense).

[20]  $3,304 (total rental income) - $7,190.37 (total rental expenses).

[21]  $3,319 (total rental income) - $8,325.37 (total rental expenses).

supplying sufficient evidence of an applicable exception. Higbee v. Commissioner, supra at 446.

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations or a substantial understatement of income tax.[22] The term "negligence" includes any failure to make a reasonable attempt to comply with the Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioner failed to provide respondent with any records and was unable to substantiate her deductions at the administrative level. Accordingly, respondent has met his burden of production. See sec. 1.6662-3(b)(1), Income Tax Regs.; see also Smith v. Commissioner, T.C. Memo. 1998-33.

The accuracy-related penalty, however, is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent

_____

[22] Because we find that petitioner was negligent, we need not discuss whether she substantially understated her Federal income taxes. See sec. 6662(b); Ochsner v. Commissioner, T.C. Memo. 2010-122; Fields v. Commissioner, T.C. Memo. 2008-207.

facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Petitioner argues she has shown reasonable cause or good faith on account of her medical illness and/or lost or stolen records.

Although we sympathize with petitioner's circumstances (i.e., her alleged illnesses), we are reluctant to rely on her self-serving and uncorroborated testimony about her illness. Moreover, she continued to work for the IRS and to participate in her investment activity during the years in issue. Consequently, petitioner's illness does not support a reasonable cause or good faith defense.

In certain circumstances, however, the loss or theft of a taxpayer's records may support a reasonable cause or good faith defense to an accuracy-related penalty. See Allemeier v. Commissioner, T.C. Memo. 2005-207; Brown v. Commissioner, T.C. Memo. 1997-418; Burkart v. Commissioner, T.C. Memo. 1984-429; Cavell v. Commissioner, T.C. Memo. 1980-516.

As stated supra, petitioner claimed deductions for bad debts and legal expenses for the Highland Lake property that she was not able to substantiate. Petitioner credibly testified that she maintained records, but that Ms. Anastasio took some of the records, some records were submitted to other courts in her lawsuits against Ms. Anastasio, and in either case, petitioner

was unable to retrieve the records.  She also attempted to reconstruct her records for the Highland Lake property.  We find that petitioner has a reasonable cause or good faith defense for the portions of the underpayments attributable to her claimed deductions for bad debts and legal expenses attributable to the Highland Lake property.  See Irving v. Commissioner, T.C. Memo. 2006-169; Lyons v. Commissioner, T.C. Memo. 1991-84; Haley v. Commissioner, T.C. Memo. 1977-348.

Petitioner's claimed deductions for theft losses related to coins and uncut currency sheets, paintings, antiques, furniture, her libraries, appliances, and the gold-spinning machines.  She credibly testified that she maintained records of her purchases of her coins and uncut currency sheets and that her inventory records were stolen with her coin collections and uncut currency sheets.  It is unclear from the evidence, however, whether she maintained records of her purchases for the other stolen items. The evidence also provides no mechanism for allocating the amounts of her theft losses among the stolen items.[23]  In addition, she did not attempt to reconstruct the records of her purchases for any of the stolen items.  Consequently, petitioner does not have a reasonable cause or good faith defense for the portions of the underpayments attributable to her claimed

_____

[23]  On her 2004 Schedule A, petitioner only wrote "Orange Co. The", and on her 2005 Form 4684, Casualties and Thefts, petitioner only wrote "Su-Berryvil Prop."

deductions for theft losses.  See <u>Kolbeck v. Commissioner</u>, T.C. Memo. 2005-253; <u>Cherry v. Commissioner</u>, T.C. Memo. 1998-360; <u>Smith v. Commissioner</u>, <u>supra</u>; <u>Cook v. Commissioner</u>, T.C. Memo. 1991-590.

Similarly, there is no evidence that petitioner maintained records during the years in issue sufficient to meet the strict substantiation requirements of section 274(d) for travel and automobile expenses.  Moreover, even if such records existed, there is no evidence that those records were lost or stolen.  And except for the amounts of her parking expenses, she did not attempt to reconstruct those records.  Consequently, petitioner does not have a reasonable cause or good faith defense for the portions of the underpayments attributable to her claimed deductions for travel and automobile expenses.  See <u>Makspringer v. Commissioner</u>, T.C. Memo. 1994-468; <u>Robbins v. Commissioner</u>, T.C. Memo. 1981-449.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.